Robert V. Cornish, Jr. (Wyo. Bar. No. 6-3898)
LAW OFFICES OF ROBERT V. CORNISH, JR., PC
680 South Cache Street, Suite 100, P.O. Box 12200
Jackson, WY 83001
Office: (307) 264-0535
Email: rcornish@rcornishlaw.com

*Attorney for Plaintiffs Kathleen Grossart Taylor; Timothy F. Keeton; Arijit De; Jennifer Skeen; Brooke Ash Investments LLC; Mark Sanders; Karen Krywy-Sanders IRA and Karen Krywy-Sanders as its beneficiary; Douglas Omundson; Douglas Omundson IRA and Douglas Omundson as its beneficiary; Steven Rumstein IRA and Steven Rumstein as its beneficiary; Kari Teske as Trustee for REIO QRP, LLC; FCohen Roth RD, LLC with Fred Cohen as its beneficiary; FCohen RD, LLC with Fred Cohen as its beneficiary; Rockmill Capital, LLC; and Rockmill Realty, LLC*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

KATHLEEN GROSSART TAYLOR; TIMOTHY F. KEETON; ARIJIT DE; JENNIFER SKEEN; BROOKE ASH INVESTMENTS, LLC; MARK SANDERS; KAREN KRYWY-SANDERS IRA and KAREN KRYWY-SANDERS AS ITS BENEFICIARY; DOUGLAS OMUNDSON; DOUGLAS OMUNSON IRA AND DOUGLAS OMUNDSON AS ITS BENEFICIARY; STEVEN RUMSTEIN IRA and STEVEN RUMSTEIN AS ITS BENFICIARY; KARTI TESKE AS TRUSTEE FOR REIO QRP, LLC; FCOHEN ROTH RD, LLC and FRED COHEN AS ITS BENEFICIARY; FCOHEN RD, LLC and FRED COHEN AS ITS BENEFICIARY; ROCKMILL CAPITAL, LLC; and ROCKMILL REALTY, LLC;

Plaintiffs,

v.

Case No. 1:25-cv-62

**COMPLAINT**

**(INCLUDING REQUEST FOR PRELIMINARY INJUNCTION AND IMMEDIATE APPOINTMENT OF RECEIVER)**

NORADA CAPITAL MANAGEMENT LLC; NORADA FUND MANAGEMENT, LLC; MARCO SANTARELLI; NORADA EQUITY INC.; NORADA CAPITAL ECOMMERCE FUND I LLC; NORADA CAPITAL CRYPTO FUND I LLC; NORADA THEATRICAL PRODUCTIONS LLC; NORADA REAL ESTATE FUNDING LLC; NORADA CAPITAL REAL ESTATE FUND I, LLC; ASPIRE EVENTS LLC; COLLECTIVE EQUITY INC.; THEMED STR CAPITAL FUND LLC; RONALD FOSSUM, JR; MICHAEL JOHNSON; ANDREW CORDLE; and EDDIE WILSON;

Defendants.

**COME NOW** Plaintiffs Kathleen Grossart Taylor; Timothy F. Keeton; Arijit De; Jennifer Skeen; Brooke Ash Investments LLC; Mark Sanders; Karen Krywy-Sanders IRA and Karen Krywy-Sanders as its beneficiary; Douglas Omundson; Douglas Omundson IRA and Douglas Omundson as its beneficiary; Steven Rumstein IRA and Steven Rumstein as its beneficiary; Kari Teske as Trustee for REIO QRP, LLC; FCohen Roth RD, LLC with Fred Cohen as its beneficiary; FCohen RD, LLC with Fred Cohen as its beneficiary; Rockmill Capital, LLC; and Rockmill Realty, LLC, by and through their attorneys, Law Offices of Robert V. Cornish, Jr., P.C., and for their Complaint state and allege as follows:

**PRELIMINARY STATEMENT**

Plaintiffs invested over $2.2 million in promissory notes issued by Defendant Norada Capital Management (the "Notes"). The foundation of the Notes was supposedly a diverse pool of profitable companies whose investment returns outperformed the stock market. While Norada Capital Management portrayed these investment holdings as promising and lucrative, none of the

holdings were *ever* producing the cash that was required for Norada Capital Management to pay interest on the Notes. Instead, they were captive companies under the common control of Marco Santarelli, who presented himself as a seasoned investor when in fact he was an utter failure. Santarelli failed to disclose to Plaintiffs his prior bankruptcy filings on behalf of himself and his company 360 Enterprises d/b/a Norada Real Estate, and violations of Pennsylvania and California state securities laws. What resulted was a classic Ponzi scheme. To maintain the Ponzi scheme, investments from new investors in the Notes were used to generate the monthly interest payments promised to other existing investors in the Notes. Through this scheme, Norada Capital Management obtained at least $92 million from deceived investors who are now left holding its worthless equity. Plaintiffs are among those investors and come before this Court seeking damages from Defendants, preliminary injunctive relief, and the immediate appointment of a receiver as to Norada Capital Management.

**PARTIES, JURISDICTION, VENUE, AND CHOICE OF LAW**

1. Plaintiff Kathy Grossart Taylor is an individual residing in Milford, Ohio.

2. Plaintiff Timothy F. Keeton is an individual residing in San Diego, California.

3. Plaintiff Arijit De is an individual residing in San Ramon, California.

4. Plaintiff Jennifer Skeen is an individual residing in San Diego, California.

5. Plaintiff Brooke Ash Investments, LLC ("Brooke Ash") is a Wisconsin LLC with a principal place of business in Green Bay, Wisconsin.

6. Plaintiff Mark Sanders is an individual residing in Hendersonville, Tennessee.

7. Karen Krywy-Sanders, beneficiary of Plaintiff Karen Krywy-Sanders IRA, is an individual residing in Hendersonville, Tennessee.

8. Plaintiff Douglas Omundson is an individual residing in Fort Worth, Texas.

9. Steven Rumstein, beneficiary of Plaintiff Steven Rumstein IRA, is an individual residing in Babylon, New York.

10. Plaintiff Kari Teske, the trustee of REIO QRP, LLC, is an individual residing in Dublin, Ohio.

11. Fred Cohen, the beneficiary of Plaintiff FCohen Roth RD, LLC and Plaintiff FCohen RD, LLC, is an individual residing in Williamsville, New York.

12. Plaintiff Rockmill Capital, LLC ("Rockmill Capital") is an Ohio limited liability company with a principal place of business at 1899 Lamb Rd. NW, Carroll, Ohio 43112.

13. Plaintiff Rockmill Realty, LLC ("Rockmill Realty") is an Ohio limited liability company with a principal place of business at 1899 Lamb Rd. NW, Carroll, Ohio 43112.

14. Defendant Norada Capital Management LLC ("Norada Capital") is a Wyoming limited liability company with a principal place of business at 30251 Golden Lantern, Suite E361, Laguna Niguel, California 92677. Norada maintains a registered agent at Republic Registered Agent LLC, 5830 E 2nd Street, Suite 7000, Casper, Wyoming 82609. Norada Capital is a purported investment management company but is not registered with any regulatory body as such.

15. Defendant Norada Equity Inc. ("Norada Equity") is a Wyoming for-profit corporation, with a principal office located at 30251 Golden Lantern, Suite E361, Laguna Niguel, California 92677. Norada Equity is purportedly an investment management company. On information and belief, Norada Equity has one sole Officer and Director: Marco Santarelli. Norada Equity is in good corporate status with the State of Wyoming. Norada Equity maintains a registered agent c/o Republic Registered Agent LLC, 5830 E 2nd Street, Suite 7000 Casper, Wyoming 82609. Component investments of the Notes were held by Norada Equity.

16. Defendant Norada Fund Management, LLC ("Norada Fund") is a Texas limited liability company, with a principal office located in a 2,800 square foot residence owned by one William Morris at 603 E Broadway Street, Prosper, Texas 75078. Defendant Norada Fund is the manager of Norada Capital and has one sole Managing Member: Marco Santarelli.

17. Defendant Norada Capital Ecommerce Fund I, LLC ("Norada Ecommerce") is a limited liability company duly incorporated in Wyoming, with a principal office located at 2232 Dell Range Blvd, Suite 200, Cheyenne, Wyoming 82009. Defendant Norada Ecommerce purports to be an investment management company. On information and belief, Norada Ecommerce has one sole Managing Member: Marco Santarelli. Norada Ecommerce is in good corporate status with the state of Wyoming. Norada Ecommerce has filed one Form D with the Securities and Exchange Commission dated July 24, 2024. Component investments of the Notes were held by Norada Ecommerce.

18. Defendant Norada Capital Crypto Fund I, LLC ("Norada Crypto") is a Wyoming limited liability company, with a principal office located at 2232 Dell Range Blvd, Suite 200, Cheyenne, Wyoming 82009 Defendant Norada Crypto is a purported investment management company. On information and belief, Norada Crypto has one sole Managing Member: Marco Santarelli. Norada Crypto is in good corporate status with the state of Wyoming. Component investments of the Notes were held by Norada Crypto. On information and belief, Norada Crypto maintains an account with Coinbase which holds some or all of its digital assets.

19. Defendant Norada Theatrical Productions LLC ("Norada Theatrical") is a Wyoming limited liability company with a principal office located at 30251 Golden Lantern, Suite E361, Laguna Niguel, California 92677. Defendant Norada Theatrical also purports to be an investment management company. On information and belief, Norada Theatrical has one sole

Managing Member: Marco Santarelli. Norada Theatrical is in good corporate status with the State of Wyoming. Component investments of the Notes were held by Norada Theatrical.

20. Defendant Norada Real Estate Funding LLC ("Norada Real Estate Funding") is a Wyoming limited liability company with a principal office located at 30251 Golden Lantern, Suite E361, Laguna Niguel, California 92677. Defendant Norada Real Estate Funding projects itself as an investment management company concentrating on real estate investments. On information and belief, Norada Real Estate Funding has one sole Managing Member: Marco Santarelli. Norada Real Estate Funding is in good corporate status with the State of Wyoming. Component investments of the Notes were held by Norada Real Estate Funding.

21. Defendant Norada Capital Real Estate Fund I, LLC ("Norada Capital Real Estate") is a limited liability company incorporated in Wyoming, with a principal office located at 2232 Dell Range Boulevard, Suite 200, Cheyenne, Wyoming 82009. Defendant Norada Capital Real Estate is an investment management company concentrating in real estate. On information and belief, Norada Capital Real Estate has one sole Managing Member: Marco Santarelli. Norada Capital Real Estate is in good corporate status with the State of Wyoming. Component investments of the Notes were held by Norada Capital Real Estate.

22. Defendant Marco Santarelli is an individual who, on information and belief, resides in Laguna Niguel, California. Defendant Santarelli is a licensed real estate broker in the State of California (License ID #01782514). At all relevant times, Santarelli was a controlling person and the sole managing member, director, and/or officer of Norada Capital, Norada Equity, Norada Fund, Norada Ecommerce, Norada Crypto, Norada Theatrical, Norada Real Estate Funding, and Norada Capital Real Estate.

23. On information and belief, Defendant Michael Johnson ("Johnson") resides in San Diego, California. Defendant Johnson is a licensed real estate agent (License ID #02016863) and is registered under Defendant Marco Santarelli's real estate broker license. At all relevant times, Defendant Johnson served as the "Senior Investment Counselor" at Norada Capital and received transaction-based compensation derived from his placement and sale of the Notes.

24. Defendant Ronald Fossum Jr. ("Fossum") resides in Seattle, Washington. Defendant Fossum was formerly a licensed broker-dealer (CRD #3194203) until SEC civil and regulatory sanctions were entered against him on or about December 19, 2017 and June 17, 2018, respectively. At all relevant times, Defendant Fossum served as the Chief Financial Officer at Norada Capital and, on information belief, performed similar roles for the Norada Defendants.

25. Defendant Aspire Events LLC ("Aspire Events") is a Florida limited liability company and maintains a principal place of business at 90 Fort Wade Road, 3rd Floor, Ponte Vedra, Florida 32081. On information and belief, Ponzi proceeds from the illegal placement of the Notes were ultimately invested by Santarelli and/or Fossum into Aspire Events.

26. Defendant Collective Equity Inc. ("Collective Equity") is a Florida limited liability company with a principal address at 90 Fort Wade Road, 3rd Floor, Ponte Vedra, Florida 32081. Collective Equity is the manager of Aspire Events.

27. Defendant Themed Str Capital Fund, LLC ("Themed Str") is a Florida limited liability company with a principal address at 7682 W Irlo Bronson Memorial Highway, Suite 1218, Kissimmee, Florida 34747. Themed Str's two managers are Marco Santarelli and Josh Luttrell. On January 24, 2024, Santarelli, on behalf of Themed Str, filed a Form D with the United States Securities and Exchange Commission ("SEC"), pursuant to Rule 506(c) of Regulation D, for a

private placement of Themed Str of $50 million dollars. On information and belief, Ponzi proceeds derived from the illegal placement of the Notes were invested in Themed Str.

28. On information and belief, Defendant Andrew Cordle ("Cordle") resides in Ponte Verda, Florida. At all relevant times, Defendant Cordle was the President and Director of Collective Equity, as well as a Senior Advisor to Norada Capital.

29. Defendant Eddie Wilson ("Wilson") resides in Ponte Vedra Beach, Florida. At all relevant times, Wilson was the Vice President, Treasurer, and Director of Collective Equity, as well as a Senior Advisor to Norada Capital.

30. The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants, are unknown to Plaintiffs, who therefore sue Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Defendants herein designated as a DOE are responsible in some manner for the events and happenings herein referred to and caused injuries and damages proximately thereby as hereinafter alleged.

31. Defendants Norada Capital, Norada Equity, Norada Fund, Norada Ecommerce, Norada Crypto, Norada Theatrical, Norada Real Estate Funding, and Norada Capital Real Estate are sometimes referred to hereinafter as the "Norada Defendants."

## JURISDICTION AND VENUE

32. This Court has personal jurisdiction over Defendants because Defendant Santarelli perpetuated this fraud primarily through Norada Capital, a Wyoming corporation. To the extent not otherwise provided, jurisdiction of this Court over each and every Defendant may be invoked through Wyoming's long-arm statute.

33. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

34. Venue is proper in the District of Wyoming pursuant to 28 U.S.C. § 1391(b)(1) because numerous corporate Defendants are incorporated in Wyoming.

35. Plaintiffs Omundson, Rockmill Realty, Teske, and Keeton acknowledge that a minority of the operative documents of their investments at issue in this case contain an arbitration clause that requires the submission of disputes against Defendant Norada Capital to the American Arbitration Association ("AAA"). These Plaintiffs aver that the arbitration clause is invalid and unenforceable under the Federal Arbitration Act, 9 U.S.C. §1 – 16 and applicable law given that, among other things, it was procured by fraud and deceit, that Norada Capital never requested permission from AAA to serve as its alternative dispute forum, and that fair play and equity require the claims of all Plaintiffs against all Defendants to be resolved economically in one forum.

## ALTER EGO

36. Plaintiffs are informed and believe and thereon allege that at all times relevant to this Complaint, Santarelli acted as an agent, servant, controlling person, or representative of Norada Capital Management LLC, Norada Fund Management, LLC, Norada Equity Inc., Norada Capital Ecommerce Fund I LLC, Norada Capital Crypto Fund I LLC, Norada Theatrical Productions LLC, Norada Realty Estate Funding LLC, and Norada Capital Real Estate Fund I, LLC, so as to render the corporate form of Norada Capital as his own.

## BACKGROUND ON NORADA CAPITAL

37. Defendant Norada Capital and its principal Marco Santarelli are each unregistered as brokers, dealers, or investment advisers. Norada Capital and Santarelli are in the business of sponsoring, marketing, and managing unregistered securities offerings to the public in the form of the Notes. According to Norada Capital, its role is to provide investors with "promissory note

investments that generate predictably monthly income" so investors "don't have to chase the volatility and unpredictable returns offered by the stock market."

38. Instead, Defendant Santarelli, with the active assistance of Defendant Fossum, utilized the Notes and the other Norada Defendants under his control to concoct a Ponzi scheme. Defendant Norada Capital served as the front company, to which investors transferred their funds under the guise of a legitimate investment. The other Norada Defendants were the supposed "investment vehicles" through which returns were to be provided.

39. On or about November 30, 2020, Defendant Norada Capital, through its Managing Member, Defendant Santarelli, filed a Form D with the United States Securities and Exchange Commission ("SEC"), pursuant to Rule 506(c) of Regulation D. Under Regulation D, companies are permitted to offer and sell securities without SEC registration provided that certain conditions are met, including the absence of any disqualifying "bad actors."

40. However, Defendant Norada Capital's "investor deck," which Plaintiffs received from September 2022 to January 2024, names Fossum (CRD #3194203) as the company's Chief Financial Officer (CFO). Fossum is a former investment fund manager who was convicted on or about June 17, 2018 of "misappropriating hundreds of thousands of dollars of investor funds he raised through unregistered securities offerings of three investment funds he owned and controlled." *Securities and Exchange Commission v. Ronald A. Fossum, Jr. and Alonzo R. Cahoon*, No. 2:17-cv-01894 (W.D. Wash., Filed Dec. 19, 2017). As a result of Fossum's conviction, the SEC indefinitely barred him from acting as a broker or investment advisor or otherwise associating with firms that sell securities or provide investment advice to the public and from participating in the issuance, purchase, offer, or sale of any security other than for his own personal account. *Id.*

Fossum's prior conviction and permanent bar by the SEC render him a "bad actor" per the applicable SEC regulations.

41. Therefore, Defendant Norada Capital was prohibited from claiming a Regulation D exemption because the presence of a disqualified individual triggered the "bad actor" disqualification under Rule 506(c). Importantly, Defendant Santarelli personally signed and certified the accuracy of Defendant Norada Capital's Form D filing, asserting that no exceptions or disqualifications applied. Given that Defendant Norada Capital's CFO is a "bad actor" pursuant to Rule 506(c) of Regulation D, Defendant Santarelli's attestation that any of the Norada Defendants were eligible to claim a Regulation D exemption from registration was materially false and misleading. Thus, any claims that Norada Capital or others may make regarding reliance on private securities offering exemptions are void as a matter of law.

42. In 2007, Defendant Santarelli's former company, 360 Enterprises d/b/a Norada Real Estate, filed for bankruptcy in the U.S. Bankruptcy Court, Central District of California. *See In re 360 Enterprises*, Petition Number 8:07-bk-12868-RK.

43. In 2008, Defendant Santarelli filed for bankruptcy in the U.S. Bankruptcy Court, Central District of California, and had his debts discharged. *See In re Marco Santarelli,* Petition Number 8:08-bk-13931-RK.

44. In June 2011, the Pennsylvania Securities Commission issued a Cease-and-Desist Order, finding Defendant Santarelli violated Pennsylvania state securities laws by offering unregistered securities to a non-accredited investor and failing to disclose his bankruptcy filing and debt discharge as well as 360 Enterprises d/b/a Norada Real Estate's bankruptcy filing.

45. As a result of this conduct in Pennsylvania, on June 13, 2012, the California Department of Corporations also issued a Cease-and-Desist Order against Santarelli, Cash Flow

Management, LLC, and Cash Flow Energy Fund, LLC, ordering they refrain from the further offer or sale of securities in California, unless and until qualification was made under California law or unless exempt. However, Defendants continued to market their security investments in Norada Capital to California residents. Some of the Plaintiffs are California residents.

**THE NOTES SCAM BEGINS**

46. Norada Capital utilized numerous marketing materials and channels, including a publicly accessible website, to perpetuate its Ponzi scheme. From at least as early as September 2022 through January 2024, Norada began distributing to Plaintiffs and others marketing materials offering "predictable income with promissory notes" and "monthly passive income with interest of 15% or more" (the "Notes"). Norada stated that investment objectives for the Notes were to provide "rates of return that are higher than banks, traditional low yield bonds, and higher than most stock dividends." Norada also offered the Notes as a way for investors to "use their self-directed traditional IRA or Roth IRA. We can recommend several custodian companies that handle the paperwork and hold your IRA while the funds are invested with us." *See* Exhibits 1 ("Predictable Income with Promissory Notes") and 2 ("Norada Capital Fund Predictable Passive Income with Promissory Notes") (collectively, the "Marketing Materials").

47. Santarelli, purportedly speaking on behalf of Norada Real Estate to falsely imply the safety of real estate investments to the Notes, also publicly promoted investments in the Notes on its YouTube channel.[1]

48. Investors in the Notes were offered terms ranging from 3-7 years, a 12% - 16.7% interest rate depending on the principal amount invested, and a possible 5% "bonus rate" if $200,000.00 or more was invested. Norada Capital stated that it sought "stable and high-income

[1] Norada Real Estate Investments, *How to Earn 15% Interest and Beat Inflation with Promissory Notes (Norada Capital Management)*, YOUTUBE (Jan. 20, 2023), https://www.youtube.com/watch?v=XZvLUd7qMPk.

opportunities with capital preservation. A second objective is to take advantage of opportunities with good capital appreciation potential."




49. Notably, Norada Capital stated that interested persons in the Notes "need to be an accredited investor as defined by the SEC."

50. One of Norada Capital's flyers also stated that its current holdings underlying the Notes fell into three categories and listed various company names as follows:

a) E-Commerce Business
   i. Pier 1
   ii. Linens n Things
   iii. Ralph & Russo
   iv. Dressbarn
   v. Stein Mart
   vi. Roland Mouret
   vii. Modell's Sporting Goods
   viii. Bodybuilding.com
   ix. The Franklin Mint
   x. Farmerscart
   xi. MentorBox

b) Real Estate and Other Businesses
   i. BRD Land & Investment
   ii. Imagination Vacation Rentals

c) Media Businesses
   i. InPickleball Media

d) Theatrical Businesses

e) Crypto Assets
   i. Bitcoin
   ii. Solana

A copy of this flyer is annexed hereto and incorporated by reference to this Complaint as ***Exhibit "1."***

51. A marketing publication Norada Capital utilized from at least August 2022 through January 2024, advertised that 55.3% of the asset allocation of Norada Capital's current holdings once classified as real estate investment were actually in so-called "Mastermind Businesses," including Aspire, Money is, and Level Up, the securities of which were held by one or more of the Norada Defendants. On information and belief, these businesses were controlled by Aspire Events. Aspire Events' manager was Collective Equity, whose officers and directors (Defendants Cordle and Wilson) served as senior advisors to Santarelli and Norada Capital. At all times relevant to this proceeding, their control by Santarelli and Santarelli's status as a controlling person of these Mastermind Businesses was never disclosed to Plaintiffs. *See* ***Exhibit "1."***

52. In the above-referenced marketing materials distributed by Norada Capital were the following cash flow projections for these underlying investments:

## CASH FLOW PROJECTIONS

Four-year cash flow projections based on current asset allocation and distribution projections:

| | 2024 | 2025 | 2026 | 2027 |
|---|---|---|---|---|
| Gross Revenues | $23,882,800 | $36,882,800 | $38,122,800 | $44,562,800 |
| Interest Expenses | -$9,615,000 | -$7,515,000 | -$4,215,000 | -$465,000 |
| Operating Expenses | -$450,000 | -$300,000 | -$300,000 | -$300,000 |
| Note Surplus / Payoffs | $8,000,000 | -$8,000,000 | -$16,000,000 | -$22,000,000 |
| | | | | |
| **NET CASH FLOW:** | **$21,817,800** | **$21,067,800** | **$17,607,800** | **$21,797,800** |

Updated January 1, 2024

Statements made herein includes "forward-looking statements" within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934 which represent our expectations or beliefs concerning future events that involve risks and uncertainties, including those associated with our ability to obtain financing for our current and future operations. All statements other than statements of historical facts included in this presentation including are forward-looking statements. Although we believe that the expectations reflected in such forward-looking statements are reasonable, we cannot assure you that such expectations will prove to have been correct. You should always consult your own independent tax or legal professionals or advisors prior to making any investment, including this one. Important factors that could cause actual results to differ materially from our expectations ("Risk Factors") are disclosed in a Private Placement Memorandum, including without limitation, in connection with the forward-looking statements included in the Memorandum. All subsequent written and oral forward-looking statements attributable to us or persons acting on its behalf are expressly qualified in their entirety by the Risk Factors.

On information and belief, these "revenue projections" were never founded on commercially reasonable or even legitimate financial data of "thriving companies" in the "fund's portfolio," and were known as much by Santarelli and Fossum. Santarelli and Fossum knew that had they actually utilized financial projections that were commercially reasonable or accurate, the rates of return would likely be minimal or negative and the Ponzi scheme therefore revealed.

53. On information and belief, these "revenue projections" were also known to be inaccurate by Santarelli and Fossum because they knowingly hired an inexperienced bookkeeper to maintain the financial records of Norada Capital and its affiliated entities. Santarelli and Fossum hired such an inexperienced bookkeeper to provide plausible deniability for the commercially unreasonable projections they orchestrated to further their Ponzi activities.

54. With the approval of Santarelli and Fossum, Norada Capital distributed a fake balance sheet to then current and prospective investors in May 2023 that claimed the Mastermind Businesses had total assets of $113.4 million. Again, Santarelli and Fossum knew that these balance sheets were inaccurate and thus false and misleading each time they were distributed to Plaintiffs and others because their Senior Advisors—Cordle and Wilson—knew about the

precarious financial positions of the Mastermind Businesses by virtue of their insider status as to operations (or lack thereof) of these entities. The purpose of the false and misleading information communicated by these individuals to then-current and prospective investors in the Notes was to suppress potential redemptions so that more assets could be gathered to continue illicit Ponzi activities and, as to Santarelli, fund his extravagant personal spending.

55. At all relevant times, Defendants failed to disclose Santarelli's prior business failures, bankruptcy filings, debt discharge, and prior findings that he violated state securities laws in his previous investment ventures. These failures by Norada Capital and Santarelli to disclose such information were intentional, as revealing Santarelli's past questionable conduct would have shattered his on-line persona as an investment savant worthy of entrustment of tens of millions of dollars for investment. In fact, the theatrical investments touted by Santarelli that were used to lure Plaintiffs and other investors to purchase Notes were nominal and meaningless in light of the overall Ponzi scheme then underway.

56. Norada Capital also explained in its Frequently Asked Questions attached to its Marketing Materials distributed from at least August 2022 through January 2024, that it "earns a profit from the investments and loans it originated to businesses and investment opportunities it underwrites." Norada further specified that an investor's principal "is automatically returned to [his/her] funding account upon the maturity of [his/her] Note. [Investor has] the option to reinvest your principal if additional investment opportunities are available at that time." These statements were false when made and known to be false by both Santarelli and Fossum, given that Norada Capital in fact did not maintain segregated "accounts" such as a "funding account" for the return of capital. This is because no such capital could ever be lawfully returned to investors in the Notes

because the underlying companies were not generating profit and investors' money was commingled and utilized by Santarelli and Fossum to conduct Ponzi activities.

57. In its marketing materials, Norada Capital emphasized the passive, hassle-free nature of investment in the Notes by stating that "[O]ur notes are ideal for passive investors seeking to add and diversify their income streams. Interest payments are deposited monthly via ACH, making it a truly hands-off passive investment." See **Exhibit "2,"** supra.

58. Since the inception of the Notes, on information and belief, Defendant Santarelli, by and through the Norada Defendants, accumulated millions of dollars from hundreds of investors through the numerous false and misleading statements in the marketing materials for the Notes. These funds accumulated by Santarelli funded, among other things, his compulsive spending in consumer goods and other non-investment activities, which on information and belief exceeded 4,000 transactions per month—*or one transaction every 12 minutes of each day*—on at least one credit card. It can be said that Santarelli's management of the underlying investments and corporate affairs of the companies providing returns for the Notes was not his main priority.

59. Crucial to the conduct of the overall Note fraud of was the "investor deck" utilized by Norada Capital and Johnson from at least September 2022 through February 2024. First and foremost, the "investor deck" omits *any* reference to Defendant Fossum and thus the registration status of the Notes. These omissions induced potential investors to believe that the Defendant Norada Capital's management had no "bad actors" under Rule 506(c) of Regulation D. Moreover, the "investor deck" contained false, fabricated, and misleading statements regarding the profitability of the Notes, the financial success of the underlying companies under Santarelli's control and the stability of the "portfolio," all of which induced Plaintiffs to purchase or continue

holding the Notes. These false and misleading statements include, but are not limited to the following statements:

A. *"Norada Capital provides investors with promissory note investments that generate predictable monthly income and double-digit returns from 12% to 15%."* This statement was **false** when made by Santarelli, Fossum, and Norada Capital to Plaintiffs because the notes were not generating these returns, they knew they were not generating such returns and had no reasonable expectation of ever generating such returns, given the lack of internal controls and misuse of investors' funds. The intent of this statement was to deceive and mislead investors into believing that the Norada Defendants were prosperous and worthy of investment, when in fact no reasonable investor would ever invest anything in any of them had the truth been disclosed.

B. *"Our fund's portfolio is made up of viable business assets that we work to grow and scale. Our notes are ideal for passive investors seeking to add and diversity their income streams. Interest payments are deposited monthly via ACH, making it a truly hands-off passive investment."* This statement was **false** when made by Santarelli, Fossum and Norada Capital, and thus the Norada Defendants, because the underlying companies all controlled by Santarelli were not viable, not growing, and had no income stream that could possibly pay the interest rates promised. Further, there was in fact no "interest" to be deposited monthly, as any such funds classified as "interest" were in fact Ponzi-type payment proceeds. The intent of this statement was to deceive and mislead investors such as Plaintiffs into believing that the Norada family of companies was a prosperous venture worthy of investment when in fact no reasonable investor would ever invest had the truth of its underlying affairs been disclosed.

60. A more detailed outline of the misrepresentations made to Plaintiffs is as follows:

| **Date** | **Investor** | **Misrepresentation** | **Why Is it a Misrepresentation?** |
|---|---|---|---|
| 09/08/2022 | Skeen | Our fund's portfolio is made up of viable | There were no viable assets in Norada Capital's portfolio |
| 08/10/2023 | Brooke Ash | | |

| | | | |
|---|---|---|---|
| 8/28/2023 | Keeton | business assets that we work to grow and scale. | to provide the promised returns. Norada did not work to grow and scale its assets or possess the knowledge or resources to do so. |
| 08/25/2023 | De | | |
| 10/24/2023 | Rockmill Capital | | |
| 09/02/2023 | Rumstein | | |
| 01/16/2024 | Omundson | | |
| 10/24/2023 | Rockmill Realty | HIGH GROWTH—We underwrite portfolio assets with high capital growth potential as the firm retains those gains on its balance sheet as a private equity firm.<br><br>HIGH CASE FLOW—We underwrite portfolio assets with high cash-flow or future cash-flow potential.<br><br>CAPITAL PRESERVATION- We underwrite portfolio | There were no gains on Norada Capital's investments to retain.<br><br>No reasonable analyst would consider Norada Capital's assets as having the potential for high cash flow, or any meaningful cashflow whatsoever.<br><br>"<br>Strong capital preservation potential" was misleading |

| | | | |
|---|---|---|---|
| | | assets with strong capital preservation potential.<br><br>Slide Deck, Investment Summary, p. 4. | when made, as the assets themselves were speculative and did not have potential for capital preservation. Further, the term "capital preservation" is a term of art for the use of fixed income instruments to forgo market returns. Its use here was misleading as it implied the safety of fixed income securities. |
| 12/14/2022 | Grossart | Norada Capital Management seeks stable and high-income opportunities with capital preservation. A secondary objective is to take advantage of opportunities with good capital appreciation potential. | The assets Norada Capital invested in were neither stable, nor generated high income. Further, the assets neither preserved investor's capital, nor provided good potential for capital appreciation. |
| 11/29/2023 | Cohen | | |

61. As a result of the misrepresentations and misinformation provided to Plaintiff Skeen by Defendants Norada Capital and Santarelli, on October 5, 2022, Plaintiff Skeen purchased a Note from Norada Capital. Skeen's Note bore the following terms:

- $100,000.00 principal amount;
- 15% Per Annum Interest; and
- 6-Year Maturity Date.

Skeen did not provide a letter of accreditation until after executing the promissory note.

62. From at least October 5, 2022 through August 31, 2023, Norada Capital and Santarelli failed to disclose to its current and prospective investors that it was operating as a Ponzi scheme, that financial information regarding component investments was known by principals and control persons of Norada Capital and the other Norada Defendants to be false or misleading, and that there was insufficient income and returns to pay the interest that was promised.

63. In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Plaintiff Grossart by Defendants Norada Capital and Santarelli, on August 31, 2023, Plaintiff Grossart purchased a Note from Norada Capital. Plaintiff Grossart did **not** meet the definition of an unaccredited investor, and Defendants never screened her to determine if she met the criteria of an accredited investor. Grossart's Note bore the following terms:

- $35,000.00 principal amount;
- 14% Per Annum Interest; and
- 4-Year Maturity Date.

64. In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Plaintiff Brooke Ash, on August 27, 2023, Plaintiff Brooke Ash purchased a Note from Norada Capital. Brooke Ash's Note bore the following terms:

- $117,000 principal amount;
- 17% per year annum interest; and
- 3-year maturity date.

65. In justifiable reliance upon the misrepresentations and misinformation provided on behalf of Norada Capital to Plaintiff Keeton, on August 29, 2023, Plaintiff Keeton purchased a Note. Keeton's Note bore the following terms:

- $100,000 principal amount;
- 17% per year annum interest; and
- 3-year maturity date.

66. In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Plaintiff De, on August 29, 2023, Plaintiff De purchased a Note from Norada Capital. De's Note bore the following terms:

- $100,000 principal amount;
- 17% per year annum interest; and
- 5-year maturity date.

De did not provide a letter of accreditation until after executing the promissory note.

67. In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Fred Cohen, on August 30, 2023, Cohen, through his self-directed Roth IRA account, purchased a Note. Cohen's Note bore the following terms:

- $250,000 principal amount;
- 17% per year annum interest;
- 3-year maturity date; and
- "Bonus" payment equal to 5% of the principal amount remaining on the Note on or before the Maturity Date.

68. As a result of these misrepresentations and misinformation provided to Cohen, on August 31, 2023, Cohen, through his Traditional IRA account, purchased another Note from Norada Capital. Cohen's Note had the following terms:

- $100,000 principal amount;
- 17% per year annum interest;
- 3-year maturity date; and
- "Bonus" payment equal to 5% of the principal amount remaining on the Note on or before the Maturity Date.

69. From at least August 31, 2023 through September 28, 2023, Norada Capital and Santarelli failed to disclose to current and prospective investors in the Notes that the Norada Defendants were components of a Ponzi scheme, that financial information regarding its component investments was known by common principals and controlling persons with Norada Capital to be false or misleading, and that there was insufficient income and returns to pay the interest that was promised due to the misuse of funds by Santarelli.

70. In a September 2023 webinar, Defendants Norada Capital and Santarelli claimed the Mastermind Businesses—where a majority of Norada Capital's investments were deployed and controlled by Santarelli —were experiencing a 45% profit margin.[2]

71. In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Plaintiff Mark Sanders by Defendants Norada Capital and Santarelli, on September 28, 2023, Equity Trust Company for the benefit of Mark Sanders and at the instruction of Mark Sanders purchased a Note. The Note had the following terms:

- $50,000.00 principal amount;
- 12% per year annum interest; and
- 3-year maturity date

Sanders did not verify his status as an accredited investor until after he already purchased the Note.

---

[2] Marco Interview: Why I Love Investing in Mastermind Businesses, NORADA CAPITAL MANAGEMENT go.noradacapital.com/mastermind (last visited March 2, 2025).

72. From at least September 28, 2023 through February 7, 2024, Norada Capital and Santarelli continued their charade in failing to disclose to any current or prospective investors in the Notes that they, along with the Norada Defendants, were operating as a Ponzi scheme and that financial information regarding component investments in the companies under common control by Santarelli was known by each of them to be false or misleading, that there was insufficient income and returns to pay the interest or "bonus payments" that were promised to holders of the Notes, and that there was no reasonable basis to believe that such income could or would be generated in the future to meet such obligations.

73. In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Plaintiff Rockmill Capital on November 11, 2023, Rockmill Capital purchased a Note. Rockmill Capital's Note bore the following terms:

- $150,000.00 principal amount;
- 15% per year annum interest; and
- 3-year maturity date.

74. In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Rumstein, on November 16, 2023, Rumstein—through Madison Trust Company—purchased a Note. The Promissory Note had the following terms:

- $100,000 principal amount;
- 15% per year annum interest; and
- 2-year maturity date.

Rumstein later executed a Note Modification on January 23, 2024 to increase his total investment to $150,000.00.

75. In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Karen Sanders, on December 18, 2023,

IRA Innovations, LLC as Custodian FBO Karen Krywy-Sanders IRA and Karen Sanders, at their instruction purchased a Note. Karen Sander's Note bore the following terms:

- $200,000.00 principal amount;
- 15% per year annum interest;
- 3-year maturity date; and
- "Bonus" payment equal to 5% of the principal amount remaining on the Note on or before the Maturity Date.

76. In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Glenn Omundson, on February 7, 2024, Glenn Omundson, purchased a Note. Omundson's Note had the following terms:

- $300,000 principal amount;
- 15% per year annum interest;
- 3-year maturity date; and
- "Bonus" payment equal to 5% of the principal amount remaining on the Note on or before the Maturity Date.

Glenn Omundson later passed away in May 2024, and the Note was transferred to Plaintiff Douglas Omundson.

77. Plaintiff Omundson purchased an additional Note through a Traditional IRA for $200,000.00 also on February 7, 2024. This Note had a 5-year maturity date, carried 15% interest per annum, and also came with the 5% "bonus" payment.

78. From at least February 7, 2024 through April 23, 2024, Norada Capital continued to conceal from current and prospective investors that it was operating as a Ponzi scheme, that financial information regarding component investments under the control of Santarelli and Fossum were known to be false or misleading, and that there was insufficient income and returns to pay the interest and "bonus payments" that were promised to holders of the Notes.

79. In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Plaintiff Rockmill Realty, on April 23, 2024, Rockmill Realty purchased a Note. The Note bore the following terms:

- $125,000.00 principal amount;
- 15% per year annum interest;
- 3-year maturity date; and
- "Bonus" payment equal to 5% of the principal amount remaining on the Note on or before the Maturity Date

80. By the end of April 2024, with little income generated from any investments supposedly made on behalf of holders of the Notes, Santarelli and Fossum knew that they needed to quickly garner assets from new investors to pay existing interest and bonus payments at the risk of the Ponzi scheme collapsing. In order for Santarelli and Fossum to gather these funds and prevent withdrawal requests, their lies and misstatements grew exponentially in order to meet their illicit fundraising objectives.

81. For example, shortly before May 9, 2024, Norada Capital sought Plaintiff Teske's investment in a Note through a 401(k) plan as a real estate investment. Because it was required to do so, Norada Capital represented to Teske's 401(k) provider that Norada Capital's Notes were real estate investments when in fact they were in "Mastermind Businesses" that were not real estate at all. Further, the conflicts of interest between Santarelli and the component companies in the Notes controlled by Santarelli presented irreconcilable conflicts of interest that, if disclosed, would not have enabled the Note to be placed in Teske's 401(k) account.

82. In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Plaintiff Teske, on May 9, 2024, Plaintiff Teske, through the TTEE Real Estate Investments Options EPSP 401(k), purchased a Note. The Promissory Note had the following terms:

- $200,000 principal amount;
- 15% per year annum interest;
- 3-year maturity date; and
- Bonus payment equal to 5% of the principal amount remaining on this Promissory Note on or before the Maturity Date

83. By June 2024, the Ponzi scheme was on the verge of collapse. But that did not stop Santarelli and Fossum from gathering more money from unsuspecting investors. From April 23, 2024 through June 21, 2024, Norada Capital still concealed from its current and prospective investors in the Notes that it was operating as a Ponzi scheme, that financial information regarding component investments under the common control of Santarelli were known to be false or misleading, and that there was insufficient income and returns to pay the interest and "bonus payments" that were promised to holders of the Notes.

84. In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital, on June 6, 2024, Plaintiff Keeton purchased another Note. Keeton's Note had the following terms:

- $55,000 principal amount;
- 15% per year annum interest;
- 3-year maturity date; and
- "Bonus" payment equal to 5% of the principal amount remaining on the Note on or before the Maturity Date.

85. Norada Capital's offering documents (to the extent any were provided) further indicated that $50,000 would be the minimum amount accepted from any investor. However, Plaintiff Grossart initially invested less than $50,000.00.

86. Such variations in the actual terms, interest rates, investment amounts, and nomenclature of noteholders among the Notes for Plaintiffs evidenced the complete lack of internal controls at Norada Capital and any rational relationship between the funds invested in Notes and the returns that could be reasonably provided. Of course, the lack of internal controls at Norada

Capital was never disclosed by any of the Norada Defendants, Santarelli, or Fossum to any investor in the Notes.

87. For example, the Notes for Plaintiffs Skeen, Grossart, Cohen, Rockmill Capital, De, Rumstein, Keeton's first investment, Mark and Karen Sanders, and Brooke Ash, made prior to December 18, 2023, detailed that "No transfer or other disposition of this Promissory Note can be made during the offering in which this Promissory Note was purchased and for nine months after the last sale in that offering (as determined by the Maker), except upon registration or an exemption from registration under applicable securities laws, established to the satisfaction of the Maker."

88. However, the Promissory Notes for Plaintiffs Omundson, Rockmill Realty, Teske, and Keeton's second investment, all of which were made between February 7, 2024 and June 6, 2024, provide "Holder may not transfer, pledge, assign, or hypothecate this Note to any person or entity *in any manner* or form subsequent to execution of this Note. This restriction shall apply irrevocably and universally to all forms of transfer, whether direct or indirect, and irrespective of the nature or purpose of the transfer. Holder shall solely hold the Note for his/her/its own account." (emphasis added). This change in the redemption language of the Notes is clear indicia that Santarelli and Fossum knew or had reason to know that their Ponzi scheme was on the precipice of collapse.

89. But the lies and deceit did not stop there. Remarkably, Santarelli and Fossum thought they could disclose away compliance with state and federal securities laws *altogether*. The Notes were and are clearly securities. Yet the Promissory Notes for Plaintiffs Omundson, Rockmill Realty, Teske, and Keeton's second investment, sold between February 7, 2024 and June 6, 2024 contained the following language:

**HOLDER UNDERSTANDS THAT THIS NOTE COULD BE DEEMED AS A SECURITY AND THUS HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION. THESE SECURITIES ARE OFFERED UNDER AN EXEMPTION FROM REGISTRATION; HOWEVER, THE COMMISSION HAS NOT MADE AN INDEPENDENT DETERMINATION THAT THIS NOTE IS EXEMPT FROM REGISTRATION.**

90. And while Defendants will no doubt seek to use their Private Placement Memorandum (PPM) as a shield from liability to Plaintiffs and other investors, it appears that not all investors received the PPM and thus were provided with virtually no risk disclosures *at all*. Plaintiffs Skeen, Grossart, Rockmill Capital, Cohen, Keeton, Mark and Karen Sanders, and Brooke Ash did not receive any copy of the PPM prior to investing. Keeton also did not receive a copy of the PPM prior to his first investment. Again, the lack of uniformity in the delivery of disclosure documents to investors in the Notes was indicative of a lack of internal control among the Norada Defendants, each under the control of Santarelli and Fossum.

91. Additionally, the Promissory Notes that Plaintiffs Skeen, Grossart, Rockmill Capital, Keeton (the first time), De, Mark and Karen Sanders, and Brooke Ash executed did not reference *any* PPM for the Notes whatsoever. This meant that the disclosures as to risks and financial information were virtually all provided directly to investors by staff at Norada Capital under the control of Santarelli and Fossum, if at all.

92. Yet there are a plethora of common badges of fraud among all of the Note purchasers, including Plaintiffs. For example, at the time of each of Plaintiffs' investments, Norada Capital and Santarelli failed to disclose the fact that (1) Santarelli previously filed for bankruptcy and had his debts discharged in 2008; (2) Santarelli was previously subject to a cease and desist order from the Pennsylvania Securities Commission in June 2011 for violating Pennsylvania state securities laws by offering unregistered securities to a non-accredited investor and failing to

disclose his bankruptcy filing and debt discharge; and (3) Santarelli's previous company 360 Enterprises d/b/a Norada Real Estate also filed for bankruptcy.

93. Further, Paragraph 6(a) of Plaintiffs' Promissory Notes provides that a default occurs when Norada Capital fails to make any payment required under the Promissory Note and such period of non-payment continued for more than a period of time ranging from 10-30 calendar days after notice from Plaintiffs. Paragraph 6 further states that

> If a Default exists, Maker agrees to provide Holder with shares and/or warrants equal to the principal amount of this Promissory Note should there be a default lasting **more than three (3) months from the month of the default**. Maker reserves the right to buy back said shares and/or warrants by paying off (satisfying) the Promissory Note's outstanding principal in full during the term of the Note.

(emphasis added).

94. Norada Capital made payments on Plaintiffs' Notes through May 2023. The payments stopped in June 2024.

## THE NOTES SCAM UNRAVELS

95. On June 13, 2024, Defendant Santarelli continued to seek investments in the Notes in a YouTube webinar. Norada continued to tout an investment in the Notes as "well-diversified."[3]

96. In the June 13, 2024 YouTube webinar, Santarelli continued to discuss the purported continued success of the Mastermind Businesses—component investments of the Notes—which were in fact not successful to a degree sufficient to support their double-digit interest payments.

97. During the June 13, 2024 webinar, one listener asked what would happen if Norada Capital converted the note to equity and how would they gain interest back. Santarelli responded that such a conversion "is actually to your benefit believe it or not because you actually can and

---

[3] Ask Marco Anything | Norada Webinar 6.11.24, Norada Capital Management, YOUTUBE, https://www.youtube.com/watch?v=nNSXcXQXucQ (last visited March 2, 2025).

probably will end up making more money by us exercising that option to convert your note into equity and then buying it back later with valuations going up on this . . . ." Santarelli affirmatively stated "***None of our businesses are suffering***." (emphasis added) "As the notes mature, we are just going to pay off the notes." Nothing could have been further from the truth, and Santarelli and Fossum knew as much when these and other statements to investors in the Notes were made with full knowledge of their falsity.

98. For example, on his podcast "Passive Real Estate Investing," in June 2024, Santarelli continued to offer and advertise 12-15% interest paid monthly as distributions on the Notes.

99. Only one week after this promotional webinar, on June 20, 2024 and a few weeks after Plaintiff Keeton furnished another $55,000, Defendant Santarelli emailed each of the Plaintiffs stating that Defendant Norada Capital would be suspending distribution payments on their Notes and converting their Notes into equity (membership interests) in Norada Capital. The e-mail included the following language:

> As with all businesses, Norada is subject to market factors that could impact its ability to make payments. Due to current market conditions and unforeseen financial challenges, we have decided to *temporarily* suspend distribution payments. This decision was not made lightly and comes after thorough deliberation and analysis of our current financial position.

This statement was false and misleading when made, as market conditions had nothing to do with the inability of Norada to repay investors. The intent of this statement was to lull investors into believing that the underlying investments had value when in fact they had little or none to speak of, and that somehow the Notes converted into equity would be reconverted since the suspension of interest payments was "temporary."

> This *requires us* to exercise our right to convert your Note and issue equity (aka membership interests) in Norada. (emphasis added) You will recall that your Note

> allows Norada to convert the outstanding balance owed into equity and that it can redeem that equity in the future by repayment of the Note principal in full. There is nothing required by you related to your Note being converted. It happens automatically upon notice being sent.

This statement was false when made, as there was no requirement that Norada convert its debt obligations to equity.

> As such, this email will provide you notice that Norada has chosen to exercise its right under the Note §6 to issue equity to you in Norada. Your equity is valued at the unpaid face value of the Note plus any accrued but unpaid interest. We expect to be in a position to redeem your interests in short order, and we will keep you posted, as always, on any developments in this regard.

This statement was false when made because the equity into which the debt obligations were converted were virtually worthless, thus rendering the valuation of equity wholly inaccurate and misleading.

> We understand the importance of distributions to our investors and recognize the impact this decision may have on your financial planning. Please be assured that this suspension is *temporary*. We are committed to resuming regular distributions as soon as our financial situation stabilizes and improves.
>
> **Our primary goal** is to ensure the long-term stability and sustainability of our business. By temporarily halting distributions, we can preserve capital, manage our resources more effectively, and invest in key areas that will drive future growth and profitability.

This statement was misleading when made as there was little or no capital to preserve, no further money to deploy, and that management of its business essentially was essentially ending a Ponzi scheme. *See* Exhibit 3 ("Notice of Note Conversion").

100. The lies and half-truths from the Norada Defendants continued unabated. Investors were now invested as equity shareholders in Norada Capital. Norada Capital promised investors "You now stand to benefit from any future gains in company and share value and any distributions paid to shareholders as determined by management." *See* ***Exhibit "4"*** annexed hereto and incorporated by reference to this Complaint ("July 8, 2024 update to investors.")

101. At this time, Santarelli also confirmed that due to the purported conversion, there would no longer be "continued interest payments. You are a shareholder and benefit from potential future gains in share value, cash distributions, and redemptions from liquidity distribution events." *Id.*

102. At this time, Santarelli also stated that the decision to suspend payments was a result of "thorough deliberation and analysis of market conditions, the cash distribution position of our investments, and our current financial position[.]" Santarelli further elaborated that "market conditions" meant "tight capital markets, slower-than-expected revenue growth with our portfolio businesses, and the overall cash position and distribution schedules of our portfolio businesses." Santarelli promised financial reports would be provided in the coming weeks to determine company and share value. *Id.*

103. At this time, Santarelli elaborated the plan is to "redeem investor's shares as soon as it becomes financially feasible." Santarelli stated "[r]edemption is the repurchase of your equity as determined by the company. It is not something the investor can choose to do at their option. It is also not based on the Promissory Note maturity date prior to the conversion to equity." *Id.*

104. At this time, as to the liquidity of the shares, Santarelli also stated "[s]hares are not liquid. They can be redeemed by the company at any time or sold privately to another investor with the approval of Norada Capital." *Id.*

105. At the time of Keeton's second investment on June 6, 2024, Defendants failed to disclose material information, including, but not limited to, the strong possibility of Norada Capital's default on the Notes and serious consideration of pausing all distributions to investors and converting the notes to equity. This is despite Santarelli admitting in an e-mail to investor Keeton dated June 25, 2024 that Defendants were "monitoring this trend *for a number of months*

but our distributions would not scale up fast/soon enough to service our Notes as originally forecasted." (emphasis added)

106. Santarelli sent investors another e-mail update on July 29, 2024, in which he confirmed that Norada Capital "in its sole discretion" made the conversion of the Notes to equity. Santarelli confirmed "Equity is not liquid or assignable" and "equity investors are not vested with voting or management authority." *See* ***Exhibit "5"*** annexed hereto and incorporated by reference to this Complaint ("July 29, 2024 update to investors").

107. When asked if the company is going bankrupt, Santarelli responded that "No, it is not. After careful consideration and analysis, we implemented these changes to ensure our business's long-term stability and sustainability, benefitting all our investors." *Id.*

108. Santarelli issued another e-mail update on August 12, 2024 specific to the e-commerce business assets of Norada Capital. *See* ***Exhibit "6"*** annexed hereto and incorporated by reference to this Complaint ("August 12, 2024 e-mail update"). Santarelli communicated that the financial instruments of the e-commerce businesses were restricted and placed into an "almost entirely debt-free holding company" called "Omni." In this letter, Santarelli stated Norada Capital invested $12,250,000.00 into "various e-commerce-based investments" and that "Norada Capital owns 11.1193% of Omni's equity today. The nonsense of this statement is inescapable. There has been no disclosure to anyone as to who manages "Omni," where Norada Capital sits in its capital stack, and why Norada Capital is even invested in it. Further, Santarelli knew or should have known by August 2024 that the Notes were placed in violation of the Regulation D exemption previously claimed, and thus any holding of unregistered, "restricted" financial instruments could not be held indirectly or beneficially by unaccredited investors.

109. To the extent funds were invested at all, Plaintiffs are informed and believe that the financial instruments invested in via the Ponzi scheme of the Notes were not registered with the SEC or Wyoming's securities authorities or the securities authorities of *any* jurisdiction. Further, Santarelli's control positions within component companies created irreconcilable conflicts of interest. Norada Capital and thus its component companies under the control of Santarelli also failed to comply with the prohibitions of solicitation of investments from unaccredited investors, which included public advertising and a publicly accessible website.

110. The Norada Defendants, Santarelli, and Fossum utilized instrumentalities of interstate commerce in connection with unlawful placements and sales of unregistered securities in the form of the Notes.

111. In connection with the foregoing, the Norada Defendants, Santorelli and Fossum made or caused to make material misrepresentations to Plaintiffs and failed to disclose, or caused to fail to disclose, material facts upon which a reasonable investor would rely, including but not limited to disclosures regarding (a) the risk level of the Notes as unsuitable for any investor, (b) each Plaintiff's lack of suitability for such investments, (c) the control and dominion of Santarelli over the Norada Defendants, (d) the lack of internal controls among the Norada Defendants, (e) the misuse of funds intended for the Notes by Santarelli, (f) the inability of Norada Capital to claim a safe harbor under Regulation D due to its own misconduct and its association with "bad actors," and (g) the accuracy of financial information regarding component companies underlying the Notes.

112. Plaintiffs are informed and believe that Santarelli, Fossum, and the Norada Defendants they controlled affirmatively knew those material misrepresentations and omissions were false and misleading when they made them or failed to make them, and knew that Plaintiffs

did not realize the risky and highly speculative nature of the investments doomed any reasonable prospects to ever get their money back. Had any one of these defendants even offered a scintilla of the truth as to the financial condition of their Ponzi scheme or warned Plaintiffs as to the true state of the Norada enterprise, none of the Plaintiffs would have purchased the Notes.

113. Even after the conversion of the Notes into equity, Defendants brazenly continued to market promissory notes in Aspire Events, LLC to Plaintiffs and other investors in the Notes. Defendants promised 17% interest and quarterly interest payments, stating the company had roughly 1,900 paying members with a current valuation of $43 million.

114. On information and belief, Plaintiffs assert that Aspire Events, LLC could not pay any investors 17% interest and that its valuation of $43 million was, is, and continues to be a sham.

115. On November 13, 2024, Norada Real Estate sent flyers for investment opportunities for a "protected return of 23%" in Turquoise Bay Resort in Englewood, Florida to investors in the Notes. Under Santarelli's control, Norada Real Estate apparently conducted this sale campaign in a last-ditch effort to keep Santarelli's Ponzi Scheme going. *See* Exhibit 7 (Turquoise Bay Promotion E-mail). Despite a small disclaimer at the bottom of the e-mail that this was only an offer from Aspire Events, LLC, the promotional e-mail was sent from a Norada Real Estate e-mail address. *Id.*

116. By the end of November 2024, virtually all communications regarding the Notes and equity of Norada Capital had ceased.

**ANY SAFE HARBOR PROVISIONS FOR FORWARD-LOOKING STATEMENTS IS INAPPLICABLE**

117. Any statutory safe harbor for forward-looking statements under state and federal securities laws does not apply to Norada Capital or those speaking on its behalf with regard to the

Notes. First, the representations made by the individual and entity defendants with respect to the risks of the Notes were not forward-looking statements when they were made or offered to Plaintiffs but instead statements made in furtherance of an overall fraud. To the extent that any such statements were forward-looking statements, other than meaningless "boilerplate," there were no meaningful "cautionary statements" or disclosures identifying important factors that could cause actual results from *each* of the component investments in the Norada Capital portfolio to differ materially from those in the forward-looking statements. Further, the safe harbor does not protect material omissions, in light of Defendants' violations of Regulation D.

## FIRST CAUSE OF ACTION
## VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND EXCHANGE ACT RULE 10b-5
## (All Plaintiffs Against the Norada Defendants, Santarelli, and Fossum)

118. Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. This cause of action is pled in the alternative to the extent permitted by law.

119. At all relevant times, the Norada Defendants, Santarelli, and Fossum (a) made or caused to make material misrepresentations regarding the risk of the Notes and/or failed to disclose the risk of the investments supporting the Notes, and thus the Notes; (b) knew that the underlying investments of the Notes, and thus the Notes, were risky and highly speculative when the statements and/or omissions were made upon which a reasonable investor would rely; (c) failed to disclose conflicts of interest in ownership and control by Santarelli and Fossum among the Norada Entities, (d) engaged in the aforementioned acts in connection with the placement and sale of unregistered securities; (e) knew that each of the Plaintiffs reasonably would rely or relied on these material misrepresentations and/or omissions in connection with their decisions to purchase or hold financial interests in the Notes; (f) knew that Plaintiffs' reliance led to the loss of substantial sums of their respective investments; and (g) knew that Defendants' misrepresentations and

omissions were made with requisite scienter and intended to and did induce Plaintiffs' reliance with the intent to defraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

120. At all relevant times, the Norada Defendants, Santarelli, and Fossum intentionally failed to disclose material facts to Plaintiffs and acted with requisite scienter with such disclosure failures, including but not limited to (a) Fossum's status as a "bad actor," (b) that Santarelli was a failure as an investment professional and in fact previously filed for bankruptcy; (c) that Santarelli was previously ordered to cease and desist from offering nonexempt, unregistered offerings of securities due to illegally soliciting an unaccredited investor and failing to disclose his bankruptcy; and (d) Santarelli's company 360 Enterprises d/b/a Norada Real Estate previously filed for bankruptcy. Defendants also made material misrepresentations and/or omissions regarding how much revenue Norada Capital's underlying investments were generating because stating otherwise would have revealed that the Notes were unsuitable for anyone. Also undisclosed was Santarelli's control person status within the Mastermind Businesses, the insufficient capitalization of those component companies of the Notes and thus the Notes to generate any return, along with the lack of any reasonable factual bases for Santarelli's "track record," the outsized returns and "bonus" promised to investors in the Notes.

121. Further, each of the Norada Defendants knew that Norada Capital was acting as an unregistered broker-dealer and investment adviser when federal securities laws required its registration as such. But at every turn and in every communication with Plaintiffs, the Norada Defendants intentionally failed to disclose that Norada Capital's operations were being conducted in violation of state and federal securities laws given that Norada Capital should have been registered as a broker-dealer or investment adviser to conduct its business, but it was not. They

acted with scienter as to these failures because had they actually undertaken the disclosures they were supposed to make, their Ponzi scheme could never have garnered funds from unsuspecting investors.

122. Through these and other misstatements and omissions, the Norada Defendants, Santarelli, and Fossum, directly and indirectly, through the instrumentalities of interstate commerce, engaged in a continuous course of causing and making misrepresentations and omissions regarding the Notes for the purpose of deceiving and misleading investors. Included in these misrepresentations were misstatements as to reliance on Regulation D as an exemption from registration when that exemption could not be invoked. The Norada Defendants, Santarelli and Fossum each also failed to disclose that the Notes and the investments supposedly supporting them were merely the pretext for the operation of a Ponzi scheme to fund compulsive spending by Santarelli. Each of the Norada Defendants, Santarelli, and Fossum knew of Santarelli's misuse of investors' funds yet stood in silence and failed to disclose such conduct to Plaintiffs or warn them.

123. At the time of these misrepresentations and key omissions, Plaintiffs were ignorant of the riskiness and speculative nature—if not the inherent worthlessness—of the investments that the Norada Defendants, Santarelli and Fossum had induced them to purchase through those misrepresentations and omissions. Had Plaintiffs known about the extreme risks involved, Santarelli's previous cease and desist orders and prior bankruptcy filings, Fossum's status as a "bad actor," and/or that Santarelli was running a Ponzi scheme to fund excessive spending, Plaintiffs would have never invested in the unregistered securities.

124. Plaintiffs further aver that the conduct of each of the Norada Defendants was so blatantly reckless as to misstatements and omissions to investors in the Notes that this Court may infer they each acted with scienter as a matter of law.

125. Based on the foregoing, the Norada Defendants, Santarelli, and Fossum each violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

126. As a direct and proximate result of the wrongful conduct, Plaintiffs suffered damages of at least $2.2 million, the exact amount of which will be proven at trial.

**SECOND CAUSE OF ACTION**
**VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT**
**(All Plaintiffs Against Defendants Santarelli and Fossum)**

127. Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. This cause of action is pled in the alternative to the extent permitted by law.

128. As alleged herein, Defendant Santarelli acted as a controlling person of Norada Defendants within the meaning of Section 20(a) of the Exchange Act. At all relevant times, Defendant Santarelli was the Managing Member of Defendant Norada Capital. By virtue of his position with Defendant Norada Capital, this individual had the power to influence and control the decision making of Defendant Norada Capital, including Defendant Norada Capital's dealings with Plaintiffs and the equity conversion done in violation of governing corporate documents. In particular, Defendant Santarelli had direct involvement in the operations of Defendant Norada Capital and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercise the same.

129. Likewise, Defendant Fossum acted as a controlling person of Norada Defendants within the meaning of Section 20(a) of the Exchange Act. At all relevant times, Defendant Fossum was the CFO of Defendant Norada Capital. By virtue of his position with Defendant Norada Capital, this individual had the power to influence and control the financial decision making of Defendant Norada Capital, including Defendant Norada Capital's dealings with Plaintiffs and the equity conversion done in violation of governing corporate documents. In particular, Defendant

Fossum had direct involvement in the operations of Defendant Norada Capital and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercise the same.

130. Also, as set forth above, Defendants Santarelli and Fossum, while acting on behalf of Defendant Norada Capital, committed primary violations of Section 10(b) and Rule 10b-5 by the acts and omissions alleged herein. By virtue of their control positions of entities intimately entwined in the Norada Ponzi scheme, Defendants Santarelli and Fossum are each personally liable for Plaintiffs' losses in the Notes pursuant to Section 20(a) of the Exchange Act.

**THIRD CAUSE OF ACTION**
**RESCISSION PURSUANT TO CALIFORNIA CORPORATIONS CODE § 25503**
**(By Plaintiffs Keeton, De, and Skeen [the "California Plaintiffs"] against Defendants Marco Santarelli and Norada Capital Management LLC)**

131. The California Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. This cause of action is pled in the alternative to the extent permitted by law.

132. California Corporations Code section 25110 provides in pertinent part, that

> It is unlawful for any person to offer or sell in this state any security in an issuer transaction . . . unless such sale has been qualified under Section 25111, 25112 or 25113 . . . or unless such security or transaction is exempted or not subject to qualification under Chapter 1 (commencing with Section 25100) of this part.

133. From August 2022 through June 2024, Defendants Santarelli and Norada Capital offered and sold securities to the California Plaintiffs in issuer transactions in the State of California.

134. The Notes offered and sold by Santarelli and Norada Capital are, contrary to the pathetic disclaimers made towards the ultimate collapse of their Ponzi scheme, "securities" within the meaning of California Corporations Code § 25019.

135. The sales referred to herein were "issuer transactions" within the meaning of §§ 25010 and 25011 of the California Corporations Code.

136. The individual and entity defendants "offered and sold" the securities referred to herein in the State of California within the meaning of California Corporations Code §§ 25008 and 25017.

137. The California Plaintiffs are informed and believe that the California Corporations Commissioner has not issued a permit or any other form of qualification authorizing Norada Capital, Santarelli, or any person or entity under their control to offer and sell any of the securities referred to herein, directly or indirectly through others, in the State of California.

138. The offer and sale of securities referred to herein were not exempt from the requirement of qualification under California Corporations Code § 25110. Moreover, (1) Defendant Ronald Fossum Jr.'s "bad-actor" status and thus Norada Capital's inability to rely on Regulation D in connection with the placement of the Notes (2) the Desist and Refrain Order from the California Department of Corporations against Defendant Santarelli made the entire securities offering of the Notes illegal in the State of California.

139. Thus, Norada Capital and Santarelli offered or sold unqualified, non-exempt securities to the California Plaintiffs in violation of California Corporations Code § 25110.

140. As a result of Norada Capital's and Santarelli's violations of California Corporations Code § 25110, each of the purchases of the Notes by the California Plaintiffs are voidable at the option of the California Plaintiffs and subject to rescission. Upon prevailing on this cause of action, the California Plaintiffs will tender their Notes to Norada Capital and Santarelli jointly and severally in exchange for the cash recovery of the consideration the California Plaintiffs paid to purchase the Notes, plus interest thereon at the legal rate. In the alternative, the California

Plaintiffs are entitled to recover damages according to proof suffered by each of them as a result of the unqualified offer and sale of the Notes.

**FOURTH CAUSE OF ACTION**
**RESCISSION PURSUANT TO CALIFORNIA CORPORATIONS CODE § 25401**
**(By the California Plaintiffs against Defendants Marco Santarelli and Norada Capital Management LLC)**

141. The California Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. This cause of action is pled in the alternative to the extent permitted by law.

142. California Corporations Code § 25401 provides:

> It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes un untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

143. In offering and selling the securities referred to the California Plaintiffs, Santarelli and Norada Capital made or caused to be made untrue statements and/or misrepresentations of material facts upon which the California Plaintiffs reasonably relied. The misrepresentations of material facts to the California Plaintiffs include, but are not limited to those which are referenced in the above chart.

144. In offering and selling the Notes, Norada Capital and Santarelli also failed to disclose material facts to the California Plaintiffs herein. The omissions of material facts included, but are not limited to those described above and the status of Norada Capital operating unlawfully as an unregistered broker-dealer or investment adviser.

145. The misstatements and omissions referred to herein were of "material facts" within the meaning of California Corporations Code § 25401.

146. As a result of the Santarelli and Norada Capital's violation of California Corporations Code § 25401, pursuant to § 25501, each of the California Plaintiffs' Note purchases are voidable at the option of the California Plaintiffs and subject to rescission. The California Plaintiffs request that this Court compel Defendants Santarelli and Norada Capital to accept the tender of their notes in exchange for recovery of the consideration the California Plaintiffs paid to purchase them, plus interest thereon at the legal rate. In the alternative, the California Plaintiffs are entitled to recover damages according to proof suffered by each of them in reliance on the misstatements and omissions by Santarelli and Norada Capital. *See* California Corporations Code §§ 25401, 25501, 25504, 25403(a).)

**FIFTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA CORPORATIONS CODE § 25504**
**(By The California Plaintiffs against Defendant Marco Santarelli)**

147. The California Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. This cause of action is pled in the alternative to the extent permitted by law.

148. Under § 25504 of the California Corporations Code, every person who directly or indirectly controls a person liable under § 25501 who materially aids in the act or transaction constituting the violation, is jointly and severally liable to the same degree as the person who committed the violation.

149. Defendant Santarelli materially aided in the acts and transactions set forth above.

150. At all times pertinent to this Complaint, Santarelli was in direct control of, and directly and personally involved in, Norada's offering and sale of promissory notes to the California Plaintiffs. Santarelli personally knew about the material omissions regarding his bankruptcies and previous cease and desist orders against him and Norada's inadequate

capitalization because he was directly involved in the underlying conduct that constituted material omissions.

151. Santarelli provided the information to Norada Capital that was designed to induce Plaintiffs' investments via the Notes. Santarelli had no reasonable grounds to believe the representations and omissions made by Norada Capital were truthful, knew that such claims were material to the decision by the California Plaintiffs to acquire securities in their entities, and he caused Norada Capital to make such representations for the sole purpose of inducing the California Plaintiffs to make investments in Norada Capital that were unsuitable for any investor.

152. Further, Santarelli knew or should have known that Norada Capital was failing to disclose the material information itemized above that would dissuade Plaintiffs from investing in Norada Capital because said omissions disclosed weaknesses in the management, finances, integrity, securities registration status, and credibility of Santarelli and Norada Capital.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE OHIO SECURITIES ACT**
**(By Plaintiffs Grossart Taylor, Kari Teske as Trustee for REIO QRP, LLC, Rockmill Capital, and Rockmill Realty [the "Ohio Plaintiffs"] against Defendants Marco Santarelli and Norada Capital Management LLC)**

153. The Ohio Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. This cause of action is pled in the alternative to the extent permitted by law.

154. Under Ohio Revised Code ("ORC") § 1707.41:

> (A) . . . any person that . . . offers any security for sale, or receives the profits accruing from such sale, is liable, to any person that purchased the security . . . for the loss or damage sustained by the relying person by reason of the falsity of any material statement contained therein or for the omission of material facts[.]

155. The above-mentioned SEC filings and investor presentations contained false statements of financials that Plaintiffs relied on.

156. With regard to the Ohio Plaintiffs, Defendants Norada Capital and Santarelli acted with scienter when misrepresenting material facts and omitting to state material facts necessary to make other presentations of material facts that are not misleading, as alleged herein.

157. It is a separate violation of ORC § 1707.44(F) for any person (including officers and directors of an issuer), with the intent to deceive, to "sell, cause to be sold, offer for sale, or cause to be offered for sale" any security at a time when such person knows that the liabilities of the issuer exceed the fair market value of its assets.

158. Santarelli and Norada Capital caused securities to be sold or offered for sale in Ohio when they "knew" that Norada Capital did not have funds deployed to generate revenue to meet its repayment obligations and was operating as a Ponzi scheme, and did so with the intent to deceive Ohio residents, including the Ohio Plaintiffs.

159. Pursuant to ORC § 1707.44(J), it is a separate violation for any person, with the intent to deceive, to make or publish an "advertisement" or a "published statement" when the person "knows that the statement or advertisement is false in any material respect."

160. The SEC filings, investor marketing materials, and PPM mentioned above constitute advertisements or published statements, and Norada Capital and Santarelli made or published these statements or advertisements "knowing" they contained false financial information. They did so to deceive Ohio residents, including the Ohio Plaintiffs.

161. ORC § 1707.44(G) states that no person "shall knowingly engage in an act or practice that is, in this chapter, declared illegal, defined as fraudulent, or prohibited" while selling securities.

162. Santarelli and Norada Capital "knowingly" engaged in acts and/or practices prohibited by this chapter in the unlawful sale of securities in Ohio. There is no Regulation D safe-harbor or state law equivalent that may be invoked due to Fossum's status as a "bad actor."

163. A single violation of any of the above-cited securities act code sections entitles the purchaser to rescission of the purchase price plus taxable costs, under ORC § 1707.43(A), in an amount according to proof at hearing.

164. The Ohio Plaintiffs, to the extent required, hereby demand rescission of their Note purchases as provide under the laws of the State of Ohio.

**SEVENTH CAUSE OF ACTION**
**PARTICIPANT/CONTROL PERSON LIABILITY UNDER THE OHIO SECURITIES ACT**
**(By the Ohio Plaintiffs against Defendants Santarelli and Fossum)**

165. The Ohio Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. This cause of action is pled in the alternative to the extent permitted by law.

166. The issuer and each person who "participated in or aided the seller in any way in making such sale" in violation of Chapter 1707 of the ORC is jointly and severally liable along with the seller. ORC § 1707.43(A).

167. Santarelli participated in or aided the seller in each of the transactions discussed above and is jointly and severally liable along with the others.

168. Fossum participated in or aided the seller in each of the transactions discussed above and is jointly and severally liable along with the others.

169. With regard to the specifics of whether or when to disclose Norada's insolvency, Fossum was the officer charged with preparing the internal financial documents and provided the patina of a Chief Financial Officer when in fact he could not lawfully act as one. Santarelli chose

not to disclose the insolvent nature of the Ponzi scheme. Santarelli and Fossum thus "participated" in the conduct.

170. Since Norada Capital is liable to Plaintiffs under ORC § 1707.41(A), Fossum and Santarelli are each liable unless they can show that they had no knowledge of the publications or just and reasonable grounds to believe the statements therein to be true or the omission of facts to be not material, pursuant to ORC § 1707.41(B)(1). They cannot.

171. Fossum and Santarelli had knowledge of these publications and lacked just and reasonable grounds to believe the statements therein were true or that the omission of facts were not material, and each of them is liable accordingly.

172. Each director held so liable has rights of contribution between each of the other Directors held so liable.

173. To the extent an alleged primary violation of Ohio's securities law is made against Santarelli and Fossum, and to the extent Norada Capital is actually liable for such violation, then Santarelli and Fossum are each liable as a participant in such violations.

174. Neither Santarelli nor Fossum has any affirmative defense(s) to the above-allegations or in connection with their violations of this statute.

175. Defendants, and each of their control persons, and each person participating in the wrongful conduct alleged above are liable, jointly and severally, to the Ohio Plaintiffs for statutory damages and costs under Ohio law.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF SECTION 581-33 OF THE TEXAS SECURITIES ACT**
**(By Plaintiff Omundson [the "Texas Plaintiff"] against Defendants Norada Capital Management LLC, Santarelli, and Fossum)**

176. The Texas Plaintiff incorporates by reference all preceding paragraphs of the Complaint as if set forth fully herein. This cause of action is pled in the alternative to the extent permitted by law.

177. Under the Texas Securities Act, Tex. Gov't. Code § 4008.52(a), a securities salesman is liable if he "offers or sells the security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading."

178. The Notes are securities for purposes of the Texas Securities Act. No Defendant in this matter can claim the benefits of any safe harbor for the offering of the Notes, insofar as (a) Fossum was a "bad actor," (b) the offering of the Notes was conducted in violation of Regulation D and thus the securities laws of the State of Texas, and (c) Norada Capital was acting as an unregistered broker-dealer and investment adviser in the State of Texas when its registration was in fact required.

179. Defendant Norada Capital, at the direction and under control of Santarelli and Fossum, caused to offer and sell the Note to the Texas Plaintiff by means, directly or indirectly, of an (a) untrue statement made to the Texas Plaintiff of material facts; and/or (b) omission to state to the Texas Plaintiff material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

180. Specifically, Defendant Norada Capital, at the direction of Santarelli, (a) intentionally omitted to disclose to the Texas Plaintiff that Norada Capital was inadequately capitalized to achieve the repayment objectives under the Note and generating insufficient revenue

to continue operating; (b) Santarelli's compulsive spending fueled by investor funds; (c) intentionally omitted Santarelli's previous bankruptcy filings both individually and on behalf of 360 Enterprises; (d) intentionally failed to disclose Fossum's status as a "Bad Actor" and (e) intentionally omitted Santarelli's prior cease and desist orders regarding his past improper offering and sale of securities. As a result of these and other misrepresentations and omissions made to investors in the Notes, all representations made to the Texas Plaintiff regarding his Note purchase were misleading and intended as such.

181. These misrepresentations and omissions were material because a reasonable investor would have attached importance to, and be induced to act upon, the misrepresented and omitted information in determining whether to invest in any financial instrument involving Norada Capital, let alone an unsecured promissory note. Indeed, a reasonable investor such as the Texas Plaintiff would have considered such facts important in making a decision whether to invest in Norada Capital, and in fact would have chosen not to invest had they been properly disclosed.

182. At the time Norada Capital intentionally misstated and omitted to state this material information to the Texas Plaintiff, Norada Capital, Santarelli and Fossum knew that the representations were false and that Norada Capital, Santarelli and Fossum had omitted to state material information. Indeed, Norada Capital, Santarelli and Fossum each knew or had reason to know of Norada Capital's inadequate capitalization and lack of insufficient revenue generation because Norada Capital had access to its own corporate records and financial statements, as well as those of entities under its common control, knew what documents it had, and had not provided them to the Texas Plaintiff. Santarelli and thus Fossum knew or had reason to know of Santarelli's compulsive spending fueled by investors' funds, Santarelli's own prior bankruptcy filings on

behalf of himself and his company 360 Enterprises d/b/a Norada Real Estate, and cease and desist orders issued against him for the unlawful offer and sale of securities in the past.

183. Defendant Norada Capital, at the direction and control of Defendants Santarelli and Fossum, (a) misstated and omitted to state this information to the Texas Plaintiff with the intent that the Texas Plaintiff would invest in Defendant Norada Capital based upon such misstatements and omissions; and/or (b) had reason to expect that the Texas Plaintiff would invest in Norada Capital based upon such misstatements and omissions. Indeed, at the time Norada Capital misstated and omitted to state this information to the Texas Plaintiff, Norada Capital was in dire financial condition, revised its note language to totally preclude withdrawals and needed to fund the shortfall perpetuated by its Ponzi-like activities. The only way Norada Capital could fund this shortfall was to solicit new investments by deceiving investors like the Texas Plaintiff. Of course, no reasonable investor would invest in a company that was inadequately capitalized to achieve its corporate purpose, had artificially inflated its capitalization, provided incomplete and inaccurate information to its investors, and operated a Ponzi scheme.

184. The Texas Plaintiff was justified in relying upon these misrepresentations and omissions.

185. The Texas Plaintiff suffered damages in reliance upon, and as a direct and proximate result of, these misrepresentations and omissions. Indeed, the Texas Plaintiff would not have invested had Plaintiff been aware of the material misrepresentations and omissions.

186. Under § 4008.55(a) of the Texas Securities Act, a person who directly or indirectly controls a seller, buyer, or issuer of a security is jointly and severally liable with the seller, buyer, or issuer and to the same extent as the seller, buyer, or issuer.

187. Under § 4008.055(c) of the Texas Securities Act, a person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth of the law materially aids a seller, buyer, or issuer of a security is jointly and several liable with the seller, buyer, or issuer and to the same extent as the seller, buyer, or issuer.

188. Because Santarelli has admitted he runs the business and makes decisions for it, Santarelli has direct and indirect power to direct or cause the direction of the management and policies of Norada Capital. Santarelli exercised control over Norada Capital to deceive and defraud the Texas Plaintiff. Likewise, because Fossum served as the front-line defense for accounting irregularities and internal controls, Fossum also exercised control over Norada Capital to deceive and defraud the Texas Plaintiff. Therefore, pursuant to § 4008.55(a) and (c) of the Texas Securities Act, Defendants Santarelli and Fossum are each jointly and severally liable for Norada Capital's violations of the Texas Securities Act to the same extent as Defendant Norada Capital.

**NINTH CAUSE OF ACTION**
**VIOLATION OF TENN. CODE ANN. §§ 48-1-121 AND 48-1-122(a)**
**(By Plaintiffs Mark Sanders and Karen Krywy-Sanders IRA and Karen Krywy-Sanders as its Beneficiary [the "Tennessee Plaintiffs"] against Defendants Norada Capital Management LLC, Fossum, and Santarelli)**

189. The Tennessee Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. This cause of action is pled in the alternative to the extent permitted by law.

190. The Tennessee Securities Act prohibits fraudulent statements, schemes, actions, or omissions in connection with the offer, sale, or purchase of securities (Tenn. Code Ann. § 48-1-121) and imposes liability upon individuals who violate this prohibition. (§ 48-1-122(a)).

191. The Notes are securities under the Tennessee Securities Act.

192. Defendants Norada Capital, Fossum, and Santarelli made untrue statements of fact, or omitted material facts, to the Tennessee Plaintiffs in connection with the offer and sale of the Notes. Defendants Norada Capital, Fossum and Santarelli each knew these statements were false each and every time they were made to the Tennessee Plaintiffs.

193. The Tennessee Plaintiffs had no reasonable means of discovering that statements made or caused to be made by Santarelli, Fossum, and Norada Capital were false. Among other things, (a) Defendants' misrepresentations and omissions concerning Norada Capital's financial conditions, (b) Santarelli's qualifications for leading such an investment, (c) Santarelli's control status of component companies of the Notes, (d) Santarelli's previous bankruptcies/cease and desist orders issued against him and (e) Fossum's status as a "Bad Actor" were each a substantial factor in the Tennessee Plaintiffs' investment decision. Indeed, these false and misleading statements induced the Tennessee Plaintiffs to execute promissory notes with Norada Capital.

194. Defendants Norada Capital, Santarelli and Fossum also engaged in acts, practices, and business operations, for the purpose of defrauding or deceiving the Tennessee Plaintiffs, and for the purpose of converting the Tennessee Plaintiffs' funds.

195. Defendants' material misrepresentations and misconduct directly and proximately caused the Tennessee Plaintiffs to suffer substantial financial harm. As a result, the Tennessee Plaintiffs have suffered the loss of their investments entrusted to Defendants.

196. Defendants willfully engaged in the above conduct.

197. The Tennessee Plaintiffs seek an award of compensatory damages against Defendants and each of them, in an amount to be determined at trial, but no less than $250,000.00, plus interest and an award of reasonable attorneys' fees and costs, pursuant to Tenn. Stat. Ann. § 48-2-122(f). In addition to seeking compensatory damages, because of the malicious, intentional,

fraudulent, and reckless nature of the conduct of these Defendants, the Tennessee Plaintiffs also seek punitive damages in an amount sufficient to punish and deter them in the maximum amount provided under Tennessee law.

**TENTH CAUSE OF ACTION**
**VIOLATION OF TENN. CODE ANN. § 48-1-122(g)**
**(By the Tennessee Plaintiffs against Defendants Santarelli and Fossum)**

198. The Tennessee Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. This cause of action is pled in the alternative to the extent permitted by law.

199. Tennessee's Blue-Sky Law also imposes liability for those who control or materially aid in the underlying violations providing that:

> Every person who directly or indirectly controls a person liable under this section, every partner, principal executive officer, or director of such person, every person occupying a similar status or performing similar functions, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the person who would be liable under this subsection (g) proves that the person who would be liable did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.

Tenn. Code Ann. § 48-1-122(g).

200. As set forth above, Defendant Norada Capital violated Sections 121 and 122(a) of the Tennessee Securities Act by their acts and omissions, as alleged herein. Fossum and Santarelli are also liable as they each controlled and materially aided these violations.

201. Santarelli—through his affiliation with and control over Norada Capital and other Norada defendants—had authority over verbal and written statements concerning the promissory

notes. As a result, Santarelli was able to solicit, accept, and transfer the Tennessee Plaintiffs' investments at his discretion.

202. Fossum—through his affiliation and control over financial reporting matters of Norada Capital and other Norada Defendants, had authority over written statements regarding financial projections and other internal control matters. As a result, Fossum exercised control over Norada Capital as to such matters.

203. By reason of their respective authority and power to directly or indirectly control Norada Capital, and by materially aiding the violations alleged herein, Santarelli and Fossum are each liable pursuant to § 122(g) of the Tennessee Securities Act.

204. As a direct and proximate result of Santarelli's and Fossum's' wrongful conduct, the Tennessee Plaintiffs suffered damages in connection with their investment in the Notes. The Tennessee Plaintiffs seek an award of compensatory and punitive damages against Santarelli and Fossum in an amount to be determined at trial, including all unpaid principal, unpaid interest, and an award of reasonable attorneys' fees and costs, pursuant to Tenn. Stat. Ann. §48-2-122(f), plus all such other relief which they may be entitled to at law or equity under the laws of the State of Tennessee.

## ELEVENTH CAUSE OF ACTION
## VIOLATION OF WISCONSIN SECURITIES' LAWS
**(By Plaintiff Brooke Ash [the "Wisconsin Plaintiff"] against Defendants Norada Capital Management LLC, Fossum and Santarelli)**

205. The Wisconsin Plaintiff incorporates by reference all preceding paragraphs of the Complaint as if set forth fully herein. This cause of action is pled in the alternative to the extent permitted by law.

206. Under the laws of the State of Wisconsin, it is unlawful to, in connection with the offer, sale, or purchase of a security, to:

> (1) To employ a device, scheme, or artifice to defraud. (2) To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. (3) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

Wis. Stat. § 551.501

207. Wis Stat. § 551.509(7) provides for joint and several liability for persons who directly or indirectly control a person held liable under § 551.501; individuals who are managing partners, executive officers, or directors of a person liable under § 551.501; and individuals who are employes of a person liable under § 551.501 who materially aid the conduct giving rise to the liability. § 551.509(7)(a)-(c).

208. The SEC filings, investor marketing materials, and PPMs mentioned above constitute an advertisement or published statement.

209. Norada Capital, Fossum, and Santarelli made, published or caused to make or publish these statements or advertisements knowing they contained materially false misrepresentations or omissions.

210. Defendant Norada Capital violated § 551.501 by its misstatements and omissions as alleged herein. Fossum and Santarelli are also liable as they each controlled and materially aided each and every one of these violations.

211. Santarelli—through his affiliation with and control over Norada Capital—had authority over verbal and written statements concerning the Notes and the underlying investments in the other Norada entities. As a result, Santarelli was able to solicit, accept, and transfer the Wisconsin Plaintiff's investments in the Notes at his discretion.

212. Fossum—through his affiliation and control over financial reporting matters of Norada Capital, had authority over written statements regarding financial projections and other

internal control matters. As a result, Fossum exercised control over Norada Capital as to such matters.

213. By reason of his authority and power to directly or indirectly control Norada Capital, and by materially aiding the violations alleged herein, Santarelli is liable pursuant to Wis. Stat. § 551.509(7)(a)-(c).

214. By reason of his authority and power to directly or indirectly control Norada Capital, and by materially aiding the violations alleged herein, Fossum is liable pursuant to Wis. Stat. § 551.509(7)(a)-(c).

215. As a direct and proximate result of Santarelli's and Fossum's wrongful conduct, the Wisconsin Plaintiff suffered damages in connection with their investment in Norada Capital.

**TWELFTH CAUSE OF ACTION**
**NEGLIGENT MISREPRENSENTATION**
**(All Plaintiffs Against the Norada Defendants)**

216. Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is expressly pled in the alternative.

217. The Norada Defendants made representations to Plaintiffs regarding material facts, including the risks and suitability of certain investments.

218. Plaintiffs are informed and believe that the representations made regarding the risks and suitability of such investments for Plaintiffs were false and/or that the Norada Defendants omitted material information regarding Santarelli's qualifications for managing millions of dollars in investments, Santarelli's control status of Mastermind Businesses, Santarelli's misuse of investor funds, as well as Fossum's capacity to act as a Chief Financial Officer when federal securities laws prohibited him from doing so given his "bad actor" status.

219. Plaintiffs are informed and believe that the representations were made by the Norada Defendants regarding the risks and suitability of the Notes without reasonable grounds for believing them to be true, and more likely than not made to further a Ponzi scheme.

220. At the time each of the Plaintiffs invested in the Notes, they were unaware of the falsity of the misrepresentations and/or omissions and acted with justifiable reliance on the truth of each and every one of those representations made by the Norada Defendants.

221. In engaging in the alleged misconduct, the Norada Defendants made misrepresentations and statements of material facts and omitted to state material facts regarding the risk and suitability of the investments, all of which were necessary to inform Plaintiffs of all material facts required to make informed decisions regarding the purchase of the unregistered securities.

222. As a direct and proximate result of the misrepresentations and omissions alleged, Plaintiffs have suffered money damages in excess of $2.2 million, the exact amount of which will be proven at trial.

## THIRTEENTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
**(All Plaintiffs Against Defendants Santarelli, Fossum, and Norada Capital Management LLC)**

223. Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is expressly pled in the alternative.

224. Santarelli and Fossum, as managing members, officers, directors, or agents of Defendant Norada Capital and entities sharing common control with it, each had a fiduciary duty to act in the utmost good faith for the benefit of Plaintiffs. Specifically, Santarelli and Norada Capital were required to adequately advise Plaintiffs regarding the risks of their investments in the Notes.

225. Norada Capital, Santarelli, and Fossum each breached their fiduciary duties owed to Plaintiffs including, but not limited to their (a) failure to adequately advise Plaintiffs regarding the financial risks inherent in such speculative investments; (b) failure to heed Plaintiffs' concerns and directions when Plaintiffs expressed concerns about the status of their Notes and the underlying investments in the Norada entities; (c) cause to obtain appropriate subscription information from Plaintiffs given the risk of an investment in the Notes; (d) failure to protect Plaintiffs' financial interests and (e) in the case of Fossum, to decline acting in any role for Norada Capital whatsoever given his status as a "Bad Actor." The actions of Norada Capital, Santarelli, and Fossum were reckless, risky, and unwarranted, especially when considering Plaintiffs' investment objectives and risk tolerances. The management of Plaintiffs' funds in the component companies of the Notes, to the extent those funds were even invested in them, fell below any reasonable standard of care in the investment management industry and caused significant financial losses to Plaintiffs.

226. As a direct and proximate result of the individual and entity defendants' breaches of fiduciary duties, Plaintiffs have suffered money damages in excess of $2.2 million, the exact amount of which will be proven at trial.

**FOURTEENTH CAUSE OF ACTION**
**FRAUD**
**(All Plaintiffs Against The Norada Defendants)**

227. Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is expressly pled in the alternative.

228. In offering and selling the securities referred to herein, the Norada Defendants made untrue statements and/or misrepresentations of material facts to some or all of the prospective

investors, including Plaintiffs herein. The misrepresentations of material facts including, but are not limited to, those described in the above paragraphs.

229. In offering and selling the securities referred to herein, the Norada Defendants also failed to state material facts to some or all of the prospective investors, including Plaintiffs herein. The omissions of material facts including, but are not limited to those described in the above paragraphs.

230. The Norada Defendants had a duty to disclose these material facts as a result of their fiduciary roles and common control.

231. The Norada Defendants had a further duty to disclose these material facts since they undertook steps to make other affirmative representations about these matters and were thus bound to make full and fair disclosure of all material facts regarding their respective business and financial affairs.

232. The Norada Defendants misrepresented, suppressed, and concealed material facts with the intent to induce reliance and to defraud Plaintiffs.

233. At all relevant times, Plaintiffs were unaware of the material facts that were misrepresented, suppressed, and concealed by the Norada Defendants. If Plaintiffs had been aware of such suppressions, misrepresentations or concealments, they would not have never invested in the Notes or would have taken further steps prior to this lawsuit to protect their interests.

234. As a direct and proximate result of the intentional and fraudulent misrepresentations, suppressions, and concealments of material facts by the Norada Defendants, Plaintiffs have suffered, and continue to suffer, money damages in excess of $2.2 million, the exact amount of which will be proven at trial.

235. The conduct of each of the Norada Defendants as described herein was despicable, willful, fraudulent, oppressive, and malicious so as to justify an award of exemplary or punitive damages to deter further misconduct.

**<u>FIFTEENTH CAUSE OF ACTION</u>**
**SET ASIDE FRAUDULENT TRANSFERS OF ASSETS**
**(All Plaintiffs Against Defendants Santarelli, Johnson, All Norada Defendants, Aspire Events, Collective Equity, Themed Str, Cordle, and Wilson)**

236. Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is pled in the alternative.

237. Plaintiffs are informed and believe that Defendant Santarelli, acting on behalf of Defendant Norada Capital, caused large amounts of corporate funds and/or other corporate assets gathered from investors and intended to benefit holders of Notes to be transferred from Defendant Norada Capital to and among each of Norada Equity, Norada Ecommerce, Norada Crypto, Norada Theatrical, Norada Real Estate Funding, and Norada Capital Real Estate.

238. Plaintiffs are also informed, and have reason to believe that funds transferred to these entities were ultimately transferred to Santarelli himself, wherein they were frittered away on excessive personal spending that may have exceeded 4,000 transactions per month on personal credit cards, which is an *average* of over 133 per day, or one every 12 minutes of the day.

239. Plaintiffs are informed and believe and thereon allege that the transfer(s) were made with an actual intent to hinder, delay, or defraud Plaintiffs in the collection of their damages and/or return of funds to which Plaintiffs were and are legally entitled.

240. Plaintiffs are informed and believe and thereon allege that, at the time the alleged transfers were made, Defendant Santarelli intended in the future to engage in this conduct in breach of relevant agreement(s) with Plaintiffs, as described more fully above, and for which Defendant Santarelli and Norada Capital intended to render themselves judgment-proof.

241. Plaintiffs are informed and have reason to believe that Johnson, as "Senior Investment Counsel" for Norada Capital, received transaction-based compensation in connection with the placement of Notes, had reason to know that Santarelli was running a Ponzi scheme, yet received commissions which were in fact derived from Ponzi proceeds.

242. Plaintiffs are informed and believe and thereon allege that Defendant Norada Capital received no money or other consideration in exchange for the aforementioned transfers and at the time of the transfers of funds and other assets, Defendant Norada Capital to Norada Equity, Inc., Norada Capital Ecommerce Fund I, Norada Capital Crypto Fund I, Norada Theatrical Productions, Norada Real Estate Funding, and Norada Capital Real Estate Fund I did not provide reasonably equivalent value in exchange for the transferred assets.

243. Plaintiffs are informed and believe and thereon allege that Defendant Norada Capital to Norada Equity, Norada Ecommerce, Norada Crypto, Norada Theatrical, Norada Real Estate Funding, and Norada Capital Real Estate Fund received assets, including but not limited to those described above, with knowledge of an intention to: (1) hinder, delay, or defraud the collection or payment of Plaintiffs' aforementioned damages; and (2) further breach relevant agreement(s) with Plaintiffs, as described more fully above.

244. Plaintiffs are informed and have reason to believe that Johnson, Aspire Events, Collective Equity, Themed Str, Cordle, and Wilson each received assets, including but not limited to those described above, with knowledge of an intention to: (1) hinder, delay, or defraud the collection or payment of Plaintiffs' aforementioned damages; and (2) further breach relevant agreement(s) with Plaintiffs, as described more fully above.

245. Plaintiffs are informed and believe and thereon allege that Santarelli and the Norada Defendants were aware or had reason to be aware of the fraudulent nature of the transfer(s). As a

result of the fraudulent asset transfers alleged herein (and other acts of mismanagement by Defendants Santarelli, Defendant Norada Capital has been rendered an empty shell, without any assets, funds, or business operations. All of the fraudulent asset transfers alleged herein are voidable under the Uniform Fraudulent Transfer Act, Wyo. Stat. §§ 34-14-201, *et seq*. and the common law of the State of Wyoming. All of the fraudulently transferred assets and funds must be equitably traced and returned to Defendant Norada Capital for the benefit of Plaintiffs, plus interest.

**SIXTEENTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(All Plaintiffs Against Defendant Norada Capital)**

246. Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is expressly pled in the alternative.

247. Plaintiffs and Norada Capital entered into the Notes. Under the terms of the Notes, Norada Capital was to pay Plaintiffs monthly interest in exchange for use of their funds until the Notes' maturity dates, subject to other conditions enumerated in the Notes and, when provided, PPMs for the Notes.

248. Plaintiffs performed under the terms of the Notes by furnishing the funds.

249. Norada Capital breached the promissory notes by automatically converting outstanding balance into equity because none of Plaintiffs' notes were in default for a period lasting more than three months pursuant to Paragraph 6 of the respective Promissory Notes.

250. Plaintiffs sustained damages as a result of Norada Capital's failure to perform as provided under Paragraph 6 of the respective Notes.

**<u>SEVENTEENTH CAUSE OF ACTION</u>**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(All Plaintiffs Against Defendant Norada Capital Management LLC)**

251. Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is pled in the alternative.

252. Plaintiffs and Norada Capital are parties to the Agreement that required Plaintiffs to furnish funds and for Norada Capital to return Plaintiffs' funds in addition to specified interest and bonus payments.

253. Plaintiffs have performed all conditions, covenants, and promises required to be performed on their part. Plaintiffs engaged in their services in good faith and timely sent their payments to Defendant.

254. Norada Capital violated its duty to act in good faith by directing Plaintiffs' investments into non-revenue generating enterprises, which was inconsistent with the parties' common purpose and justified expectations based on the Notes.

255. As a direct and proximate result of Norada Capital's wrongful acts alleged herein, Plaintiffs have and continue to suffer damages.

**<u>EIGHTEENTH CAUSE OF ACTION</u>**
**DECLARATORY JUDGMENT**
**(By Plaintiffs Omundson, Rockmill Realty, Teske, and Keeton against Defendant Norada Capital Management LLC)**

256. Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is expressly pled in the alternative.

257. Paragraph 15 of the Notes executed by Plaintiffs Omundson, Rockmill Realty, Teske, and Keeton (the second time) and Norada Capital include what purports to be an alternative dispute resolution which requires the parties to submit their disputes arising out of the Notes to

"an agreed upon single Arbitrator in Collin County, Texas applying American Arbitration Association ('AAA') Rules and Policies to make a binding decision in the Claim."

258. However, the alternative dispute resolution is not enforceable under the Federal Arbitration Act, 9 U.S.C. §1 – 16 and applicable law given that, among other things, it was procured by fraud and deceit. The arbitration provision violates public policy and is not enforceable in the State of Wyoming.

259. Plaintiffs Omundson, Rockmill Realty, Teske, and Keeton further aver that given the dire financial condition of Norada Capital and Santarelli, they would not meaningfully participate in any arbitration to its conclusion or are financially unable to do so.

260. Further, given that the arbitration clause is unenforceable as to Norada Capital and any ambiguity of the clause is construed against it as a matter of law, none of the other Defendants in this case may claim that they are actual or intended third-party beneficiaries of the arbitration clause. In addition, judicial economy requires the subject claims be resolved in one forum.

261. Plaintiffs Omundson, Rockmill Realty, Teske, and Keeton thus seek a declaratory judgment that the alternative dispute resolution provision of the Note is void under public policy and law of the State of Wyoming, and do not bind them.

**NINETEENTH CAUSE OF ACTION**
**ACCOUNTING**
**(By All Plaintiffs Against Norada Capital Management LLC)**

262. Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is pled in the alternative.

263. Plaintiffs and Norada Capital had a fiduciary relationship based upon execution of the Notes.

264. Norada Capital breached its fiduciary duties to Plaintiffs based upon the fraudulent misrepresentations and omissions that resulted in Plaintiffs' investments.

265. Norada Capital's breaches of fiduciary duties were with respect to the Notes, property in which Plaintiffs have an interest.

266. Plaintiffs demand an accounting that confirms whether any of the money due and owing to them remains in Norada Capital's custody and/or control; identifies the recipients of any of the funds disbursed from Norada Capital; and provides all evidence concerning the disbursements and the disbursed amounts.

267. To date, Norada Capital has not provided this information.

268. Plaintiffs have no adequate remedy at law.

269. Accordingly, Plaintiffs now demand that Norada Capital accounts for all of their actions relating to the Note amounts and provide Plaintiffs with all of the records in their possession relating to same.

**TWENTIETHCAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(All Plaintiffs As to Defendants Norada Capital Management LLC and Santarelli)**

270. Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is pled in the alternative.

271. Plaintiffs conferred a benefit to Defendants via investment through the Notes.

272. Defendants voluntarily accepted and retained the benefits conferred.

273. The circumstances are such that it would be inequitable for Defendants to retain the benefits without paying the value thereof to Plaintiffs.

**PRELIMINARY INJUNCTION AND ATTACHMENT REQUIRED AS TO NORADA CAPITAL MANAGEMENT LLC**

274. Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is pled in the alternative.

275. Each Plaintiff provided Norada Capital with money.

276. On information and belief, Norada Capital has transferred Plaintiffs' funds to other Norada entities and/or other companies affiliated with Norada Capital, including Defendants Aspire Events and Collective Equity.

277. The Norada Defendants and other related companies engaged in such activities in concert with Santarelli, aided and abetted the illicit actions, or are otherwise unlawfully in possession of the property of Plaintiffs.

278. By Norada Capital and Santarelli's actions, Plaintiffs have been deprived of the right and benefit to their property.

279. Santarelli and Norada Capital misappropriated Plaintiffs' property for their own use and the use of the other defendants, which they are not entitled to receive.

280. Defendants have taken and are taking actions to dissipate the funds and other assts which were obtained, in whole or in part, by using the funds from Plaintiffs.

281. In the absence of immediate injunctive relief, Plaintiffs will suffer irreparable damage and harm and there is, and will continue to be, an immediate danger of significant loss and continued harm to Plaintiffs.

282. Plaintiffs request the Court issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily, and permanently enjoin Norada Capital and its officers, agents, servants, employees, attorneys, and accountants, and those persons and entities in active concert or participation with any of them, who receive actual notice of the

order by personal service or otherwise, and each of them, from: (a) transferring, changing, wasting, dissipating, converting, concealing, or otherwise disposing of, in any manner, any funds, assets, claims, or other property or assets owned or controlled by, or in the possession or custody of these Defendants; and (b) transferring, assigning, selling, hypothecating, or otherwise disposing of any assets of Norada Capital or entities sharing common control with Norada Capital, including but not limited to those entities identified as Defendants in this case.

283. Plaintiffs request the Court issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure an order that temporarily, preliminarily, and permanently enjoin Norada Capital and its officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, books, records, computer programs, computer files, computer printouts, correspondence, including e-mail, whether stored electronically or in hard copy, memoranda, brochures, or any other documents of any kind that pertain in any manner to the business of Defendants.

284. Plaintiffs further request that the Court freeze any accounts in which Santarelli and Norada Capital own and/or control and/or have an interest, and impose by temporary and permanent injunctive relief a constructive trust upon the proceeds of Norada Capital's illegal conduct and grant Plaintiffs such other and further relief which may be appropriate under the circumstances.

**REQUEST FOR APPOINTMENT OF RECEIVER FOR NORADA CAPITAL**

285. Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is pled in the alternative.

286. Defendants have, in varying forms and degrees, absconded with millions of dollars of Plaintiffs' funds.

287. As a consequence of Norada Capital's failure to make principal, interest, and/or other payments when due under the Notes, Norada Capital is in default of the terms of the Notes.

288. Defendants have mismanaged Plaintiffs' funds such that Plaintiffs are without access to the funds, nor can they ascertain the current location of the funds.

289. On information and belief, Defendants have or will destroy Norada Capital's business records and communications to hide their wrongful acts given Norada Capital's utter lack of internal controls.

290. Defendants lack any justifiable business reason for their misconduct.

291. Plaintiffs seek the appointment of a receiver to manage the affairs of Norada Capital pursuant to Wyoming Stat. Ann. § 1-33-101(a)(ii) and/or § 1-33-101(a)(iii) and to take all necessary action consistent with Wyoming law.

292. Pursuant to Wyoming Stat. Ann. § 1-33-104, the receiver under control of the Court, may take possession of Norada Capital's property, make transfers, and generally do acts respecting the property as the Court may authorize.

293. Various Defendants are guilty of fraud and gross mismanagement in the conduct and control of Norada Capital in that they have personally converted, embezzled, or otherwise improperly received funds from Norada Capital and otherwise used Norada Capital as a platform to steal from Plaintiffs. Plaintiffs, as interested parties, are threatened with material losses and injuries, including Norada Capital suffering continuous waste and a dissipation or diminution in value, if Norada Capital remains in control of any of its assets.

294. As a direct and proximate result of ongoing breaches of duties owed to Plaintiffs, Plaintiffs have suffered and shall continue to suffer irreparable harm, absent the appointment of a receiver over Norada Capital.

295. The appointment of a receiver during the pendency of these proceedings is necessary to conserve, preserve, protect, and administer assts in which Plaintiffs have an interest. Plaintiffs request an order pursuant to Wyo. Stat. Ann. § 1-33-101(a)(ii) and/or 1-33-101(a)(iii) appointing a receiver to immediately take possession and control of Norada Capital's business, funds, and assets, including Norada Capital's accounts with Coinbase.

## JURY TRIAL REQUESTED

Plaintiffs request a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray for judgment as follows:

1. For preliminary and permanent injunctions, enjoining and restraining Norada Capital from dissipating or causing to dissipate any funds traceable to Plaintiffs' investments in the Notes;

2. The immediate appointment of a receiver over Norada Capital to protect the interests of Plaintiffs;

3. An accounting of their funds;

4. Compensatory damages and/or other monetary relief in excess of $2.2 million as provided under applicable state and federal laws, the exact amount of which will be proven at trial;

5. For exemplary or punitive damages, in an amount according to proof at trial;

6. For reasonable attorneys' fees and costs;

7. For pre- and -post-judgment interest; and

8. All other relief deemed just, proper, and equitable by the Court.

Dated: March 3, 2025

**LAW OFFICES OF ROBERT V. CORNISH, JR., PC**

/s/ *Robert V. Cornish Jr.*
ROBERT V. CORNISH JR. (WSB# 6-3898)
680 South Cache Street, Suite 100, P.O. Box 12200
Jackson, WY 83001
Office: (307) 264-0535
rcornish@rcornishlaw.com

*Attorney for Plaintiffs Kathleen Grossart Taylor; Timothy F. Keeton; Arijit De; Jennifer Skeen; Brooke Ash Investments LLC; Mark Sanders; Karen Krywy-Sanders IRA and Karen Krywy-Sanders as its beneficiary; Douglas Omundson; Douglas Omundson IRA and Douglas Omundson as its beneficiary; Steven Rumstein IRA and Steven Rumstein as its beneficiary; Kari Teske as Trustee for REIO QRP, LLC; FCohen Roth RD, LLC with Fred Cohen as its beneficiary; FCohen RD, LLC with Fred Cohen as its beneficiary; Rockmill Capital, LLC; and Rockmill Realty, LLC*